No. 81-368

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

JACK WHITE,

Defendant and Appellant.

---

Appeal from:  District Court of the Second Judicial District,
In and for the County of Silver Bow
Honorable Mark Sullivan, Judge presiding.

Counsel of Record:

For Appellant:

Karla Gray argued, Butte, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert McCarthy, County Attorney, Butte, Montana
Patrick Flemming argued and Christopher Miller argued,
County Attorney's Office, Butte, Montana

---

Submitted:   May 11, 1982

Decided:   August 26, 1982

Filed: AUG 27 1982

Thomas J. Keasney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appellant Jack White was found guilty upon jury trial in the Second Judicial District Court, Silver Bow County, of the offense of felony burglary. He appeals from the judgment of guilty and from the 10 year sentence which was imposed. We affirm.

At approximately 4:00 a.m. on January 23, 1981, White was riding as a passenger in a car driven by Fritz Dahlman. The car was stopped by a Butte-Silver Bow law enforcement officer who observed the car driving along the street at night without lights, its brakelights flashing on and off. When he stopped the automobile, he discovered no license plates, but a license sticker which had expired at midnight just preceding. On top of the automobile Dahlman was driving was part of a roll-top desk stamped with the words "Schulte Glass." The other portion of the desk was sticking out of the rear compartment of the automobile. The investigating officer, by radio communication with his central headquarters, determined that Robert Schulte, the proprietor of Schulte Glass Shop in Butte, owned a roll-top desk which fitted the description of the roll-top desk in the automobile. Schulte came to the scene and identified not only the roll-top desk, but a vacuum cleaner and other items of evidence which were taken into the possession of the police. Dahlman and White were eventually charged with burglary. Both pleaded not guilty. Dahlman subsequently changed his plea to guilty and was granted a three year deferred sentence. He also testified against White.

A plea bargain was offered to White which would in exchange for his plea of guilty grant him a 10 year sentence

with 5 years suspended. White decided not to accept the plea bargain, and his jury trial was set for June 16, 1981. On June 16, White's attorney appeared before the District Court and advised the court that White intended to rely on an alibi defense, and moved for a continuance of the trial date. The motion was granted and the trial was continued until June 18. Before the District Court granted the continuance, it required an affidavit from White that the first time he told his counsel about his alibi defense was on the date of the motion for continuance.

At the trial, Dahlman testified for the prosecution stating that White had been with him when he broke into the Schulte Glass Shop and took the items involved. White testified that he had been somewhere else at the time the crime was committed. White had two other witnesses testify supporting his alibi. During cross-examination, White was repeatedly asked why he had not raised his alibi defense earlier.

The jury found White guilty and the 10 year sentence was imposed upon White.

Issues raised by White are: (1) the prosecutor's inquiries into the appellant's post-arrest silence violated White's Fourteenth Amendment right to due process; (2) although White's counsel did not object to this cross-examination, this Court should consider the first issue under the plain error rule; and (3) the District Court imposed an increased sentence on White because he chose to exercise his right to a jury trial.

White contends that in his testimony at the trial, he did not testify on direct examination concerning any post-arrest actions. On cross-examination, however, he was asked

by the prosecutor whether he had ever told his first attorney anything about his alibi defense, whether he had told the officers that arrested him that he had an alibi, when he had told his second attorney about his alibi, whether he ever told anyone in the county attorney's office about his alibi, or approached the judge or any other person respecting his alibi.

White contends that this type of cross-examination was repudiated by the United States Supreme Court in Doyle v. Ohio (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91.

Doyle does indeed hold that it is improper on cross-examination to inquire repeatedly as to why defendants did not tell the narcotics agent who arrested them about the frameup story later relied on by the defendants as an alibi for the crime.

The State contends that Doyle does not apply in this case, that the defendant in this case opened the door to his impeachment on cross-examination by the prosecutor, and this Court should look instead to State v. Wilson (1981), _____ Mont. _____, 631 P.2d 1273, 38 St.Rep. 1040, 1044, as controlling.

We find that White did indeed open the door to the kind of impeachment cross-examination to which he was subjected by the prosecutor. In his direct testimony, White said:

"Q. What did they say to you when they took you out of the car? A. They never said anything.

"Q. Did they cuff you? A. Yes.

"Q. Did they search you? A. Yes, they did.

"Q. Did any other police officers arrive after the first? A. Yes, there was one other patrol car that was there.

-4-

"Q. Did you ever say anything to a police officer? A. No, I never.

"Q. Did you ever confess to this crime? A. No, I never did.

"Q. Have you confessed to this crime since that date? A. No."

This Court said in Wilson, supra:

"[W]hen a witness voluntarily testifies, the privilege against self-incrimination is amply respected without need of accepting testimony freed from the antiseptic test of the adversary process. The witness himself, certainly if he is a party, determines the area of disclosure and therefore of inquiry. Such a witness has the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to testify at all. He cannot reasonably claim that the Fifth Amendment gives him not only this choice, but if he elects to testify, an immunity from cross-examination on the matters he has himself put in dispute. It would make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell . . . The interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination. Petitioner, as a party to the suit, was a voluntary witness. She could not take the stand to testify in her own behalf and also claim the right to be free from cross-examination on matters raised by her own testimony on direct examination. (Citing a case.)" 631 P.2d 1273, 38 St.Rep. 1040, 1044, 1045.

We interpret Wilson to mean that a defendant who testifies cannot cloak himself with seeming innocence because of his silence following his arrest, and yet be immune from impeachment examination when, to attack his credibility, the same kind of silence can be shown to speak of his guilt and not his seeming innocence. Doyle is founded on the fact that the defendants had received their Miranda warnings, that they had a right to keep silent, and in Doyle, the defendants were merely exercising their Miranda rights by being silent.

-5-

Here White made positive assertions in his direct testimony which put in issue his silence, not as an exercise of his Miranda right to be silent, but as a way of showing that he was innocent of the crime and that his alibi was true. In that situation, the State cannot be shackled by the Fifth Amendment from impeachment cross-examination. We find no impropriety in the cross-examination of White under the circumstances here.

In view of our determination of the first issue, there is no need to discuss the second, whether this Court could consider the first issue where no objection was made by defense counsel at the time of the occurrences in the District Court. Since we find no error on the first issue, it is unnecessary to determine whether the cross-examination should have been objected to by defense counsel.

The third issue relates to the severity of the sentence imposed on White. He contends that since Dahlman was offered and he accepted a deferred sentence of 3 years for the same crime of which White was convicted as an accomplice, the prosecution was unfair in not offering him the same kind of plea bargain; that the District Court itself indicated that White "took his chances" when he refused the plea bargain, and that these circumstances raise a "reasonable inference" that his 10 year sentence resulted in part from his exercise of the right to a jury trial.

The State answers this contention by pointing out that White had a prior felony record, which the Court also considered in connection with his sentence. It further contends that more than a "reasonable inference of impropriety is required in the sentencing processing"; there must be shown to be an abuse of discretion by the judge in imposing the

-6-

sentence which gives rise to a right to relief on appeal.

In State v. Davison (1980), ___ Mont. ___, 614 P.2d 489, 37 St.Rep. 1135, this Court addressed the same question. There we stated that to undermine the legality of a sentence imposed on a defendant in the District Court, abuse of discretion in the sentencing process is necessary. Where the court considers the nature of the crime committed and the defendant's past behavior, among other factors, the extent of punishment is vested within the sound discretion of the trial court. Davison, supra. As we pointed out in Davison and as it applies here, we are speaking of the legality of the sentence for the purpose of appellate review, and not of any right to relief that White may have before the Sentence Review Division of this Court. When we consider all the factors of this case, including the strong probability that the asserted alibi defense was frivolous, we find no abuse of discretion by the District Court in imposing the 10 year sentence on White. Accordingly, we affirm.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-7-