No. 83-521

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

THE STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

CHRIS FURLONG,

        Defendant and Appellant.

---

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable H. William Coder, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Daniel Donovan, Great Falls, Montana

    For Respondent:

        Mike Greely, Attorney General, Helena, Montana
Robert F. W. Smith, Asst. Atty. General, Helena
J. Fred Bourdeau, County Attorney, Great Falls,
Montana

---

ON REHEARING

Submitted: October 15, 1984

Decided: November 13, 1984

Filed: NOV 13 1984

*Ethel M. Harrison*

—————————————————————
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant Chris Furlong was convicted of felony theft following a jury trial in Cascade County and sentenced to ten years in the Montana State Prison with an additional ten years added for being a persistent felony offender. Defendant appeals. We reverse and dismiss.

Two battery chargers and a portable welder were stolen from a garage at a residence in Great Falls sometime between the late evening hours of March 13 and the early morning hours of March 14, 1983.

An officer responding to the theft report passed Furlong in his car approximately ten blocks from the residence. Earlier, at approximately 12:30 a.m., another officer pulled behind Furlong's car and noticed that the trunk was open about four to six inches and tied with a heavy cord. When Furlong pulled into the Office Bar, the officer looked through the opening in the trunk and saw a heavy-duty electrical cord and what appeared to be a battery charger or a welder. This officer discussed what he had seen with the officer who later answered the call regarding the theft. Both officers recognized the car as Furlong's and Furlong as the driver of the car.

Furlong was arrested on his way home that night by a third officer, Sergeant Krakalia of the Great Falls Airport Police Department. He was given the Miranda warning. At the time of the arrest, the two battery chargers and the welder were still in the trunk.

Furlong offered an alibi defense. He states that he was in the Office Bar and that he loaned his car to another individual who drove it while Furlong remained at the bar.

2

He admits he noticed the trunk was partially open and tied with a cord when he left the bar but states that he did not look into the trunk. Instead, when he got in his car to leave, he asked a friend who was with him what was in the trunk. The friend indicated it was "some stuff of Julian's." Furlong did not question him further about it.

Furlong raises several specifications of error but three are determinative and each alone constitutes reversible error. We will consider only those issues. They are as follows:

1. Whether the State presented sufficient evidence of the value of the property to sustain a conviction for felony theft;

2. Whether the evidence supported an instruction on the lesser-included offense of misdemeanor theft; and,

3. Whether the prosecutor's questioning at trial with regard to Furlong's silence at the time of arrest constituted denial of due process.

I

The first and second specifications of error can be considered together. They are that the State failed to present sufficient evidence of value to sustain a conviction of felony theft and that the court failed to instruct on the lesser-included offense of misdemeanor theft.

The testimony as to value was as follows (direct examination):

> "Q. All right. What do you figure your welding unit and two battery charges were worth, Charles? A. Value, approximately $235.
>
> "Q. Could you break that down roughly? A. The welder was—I bought the welder.

I gave $179 for it. And each individual battery charger is about $25-26 apiece for those."

On cross-examination:

"Q. Mr. Abresch, you stated what the purchase price on those items were. [Sic.] Let me back up here a minute. You say you bought the welder for $179? A. Yes, sir.

"Q. When was that? A. Either in April or May of 1978.

". . .

"Q. And how about the date of the purchase on the battery chargers? A. The bigger approximately around the same time [approximately five years before trial]. The smaller one maybe three years ago.

". . .

"Q. Have you depreciated either--any of those three items over the years you have had them for tax purposes or any other purpose? A. The welder, not the battery chargers.

"Q. How much has the welder been depreciated to? A. Maybe 100% this year.

"Q. One hundred percent by this year. That's down to 100%? A. Yes, sir, I believe it is on the last year or this year."

In refusing to give the instruction for misdemeanor theft, the District Court found that the State had a prima facie case for felony theft and therefore the instruction for misdemeanor theft was improper.

Furlong cites State v. Young (Mont. 1983), 669 P.2d 239, 40 St.Rep. 1474, where we remanded for a new trial following a conviction for felony theft based on the failure to instruct on misdemeanor theft. This Court stated:

"Since value is an element of the crime of theft, and is a fact question, the question of value must be decided by the jury. [Citation omitted.] Even though the District Court here may have considered the evidence of value less than

4

> $150.00 weak and inclusive, it was still
> bound to instruct the jury on the
> lesser-included offense of misdemeanor
> theft . . ." 669 P.2d at 242, 40 St.Rep.
> at 1478.

Further, in State v. Sunday (1980), 187 Mont. 292, 609 P.2d 1188, a conviction for felony theft was reversed when the State failed to prove the value of the property stolen to exceed $150. In Sunday, evidence showed that defendant had stolen a pickup truck, two firearms, a gunbelt and holster, and from $120 to $125 in cash. However, the State failed to introduce proof to show the value of the non-cash items.

In addition, section 45-2-101(69), MCA, provides:

> "(a) 'Value' means the market value of
> the property at the time and place of the
> crime, or, if such cannot be satisfacto-
> rily ascertained, the cost of the re-
> placement of the property within a
> reasonable time after the crime. . . .
>
> "(b) When it cannot be determined if the
> value of the property is more or less
> than $150 by the standards set forth in
> subsection (69)(a) above, its value shall
> be considered to be an amount less than
> $150." (Emphasis added.)

And finally, although not cited by Furlong, we recently held in State v. Sotelo (Mont. 1984), 679 P.2d 779, 41 St.Rep. 568, dealing with whether the defendant had the right to a negligent homicide instruction as a lesser included offense of the deliberate homicide charge, that:

> "The rule is that the District Court's
> instructions must cover every issue or
> theory having support in the evidence,
> and the inquiry of the District Court
> must only be whether or not any evidence
> exists in the record to warrant an in-
> struction. State v. Buckley (1976), 171
> Mont. 238, 557 P.2d 283." 679 P.2d at
> 781, 41 St.Rep. at 570.

Furlong's arguments on these specifications of error represent correct statements of the law. Here, the State provided only evidence of value of the stolen items some

5

three to five years prior to the date of theft. The statutes and our prior rulings have consistently required value be established as of the time and place of the crime. The State failed to provide the necessary evidence.

The only evidence as to current value of any of the items was brought out on cross-examination where the owner stated that the welder, which he had purchased for $179 five years prior to the theft, had been depreciated 100 percent.

It is the State's burden to prove the elements of the crime at trial. When this act was committed the value of the items taken had to be at least $150 at the time and place of the theft in order to sustain a charge of felony theft. The State presented only evidence of value some three to five years prior to the crime charged and consequently failed to meet its burden.

As stated previously, if there is _any_ evidence to support the instruction, a lesser included offense instruction must be given. _Sotelo_, supra. Here, the owner testified that the largest and perhaps most valuable item stolen had been depreciated 100 percent. While value for tax purposes and fair market value may not be identical, such testimony certainly qualifies as evidence of reduced value. By refusing to instruct on misdemeanor theft, the District Court forced the jury to ignore evidence of lesser value and, if they believed Furlong guilty, to convict him only of felony theft. As we held in _Young_, supra, the question of value is a jury question and the taking of that determination from the jury constitutes reversible error. The conviction for felony theft must be reversed.

The final specification of error which we will consider is whether the prosecutor's questioning at trial regarding Furlong's silence at the time of arrest constituted denial of due process.

The questioning and testimony are as follows:

"Q. Is this the first time you have told this story to anyone, Mr. Furlong? A. Except what I have discussed with my lawyer.

"Q. You didn't think to tell the Police, the investigator, the County Attorney this before? A. Nobody ever came to me and asked me what happened.

"Q. You are charged with a felony crime. Do you understand that? A. Yes.

"Q. You never thought about just mentioning that to somebody, did you? A. Mentioning what?

"Q. That you have no idea how the property got in your car, never crossed your mind to mention that to anybody? A. What do you mean?

"Q. When you were arrested by Sergeant Krakalia, you didn't just happen to mention, 'I don't know how that property got in there. I loaned my car to Johnny and he came back with it'? A. I didn't say anything.

"Q. But you are going to be arrested on a felony crime and you don't think to offer an explanation when you are a totally innocent victim?

"MR. KAMPFER: Your Honor, I believe maybe it's necessary at this point that the jury be instructed that nobody is required to give a statement in that situation necessarily and what that would prove would be merely speculation.

"THE COURT: I don't know if that's an adequate rule of law, you know. It's not an objection to this line of questioning. It's overruled.

"Q. (By Mr. Snyder) The question, Mr. Furlong, was you are charged with a serious offense. You are arrested and

taken to the City Jail that night by
Sergeant Krakalia and other members of
the County Sheriff's Department and the
Police Department. Were you so durnk you
didn't care about -- so drunk for a crime
somebody else may have committed? A. I
made one phone call when I was at jail."

Furlong argues that Doyle v. Ohio (1976), 426 U.S. 610,
96 S.Ct. 2240, 49 L.Ed.2d 91, is controlling on this issue.
In Doyle the Court stated:

"Moreover, while it is true that the
Miranda warnings contain no express
assurance that silence will carry no
penalty, such assurance is implicit to
any person who receives the warnings. In
such circumstances, it would be fundamen-
tally unfair and a deprivation of due
process to allow the arrested person's
silence to be used to impeach an explana-
tion subsequently offered at trial." 426
U.S. at 618. (Emphasis added.)

Conversely, the State argues that State v. Wilson
(Mont. 1981), 631 P.2d 1273, 38 St.Rep. 1040, and State v.
White (Mont. 1982), 650 P.2d 765, 39 St.Rep. 1619, control.
Wilson adopted the United States Supreme Court's position
that Doyle does not apply to pre-arrest silence. Wilson,
supra, 631 P.2d at 1277, 38 St.Rep. at 1045; ; Jenkins v.
Anderson (1980), 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86.
In White, we held that defendant's post-Miranda, pretrial
silence is a proper subject of cross-examination where defen-
dant raises the issue of his earlier silence and proceeds to
characterize that silence as proof of innocence rather than
as an exercise of his Miranda rights. White, supra, 650 P.2d
at 768, 39 St.Rep. at 1622.

Furlong, unlike Wilson, had been assured of his right
to remain silent. He neither raised the issue of his initial
silence nor attempted to characterize his silence as proof of
innocence. The Doyle ruling applies: the State may not seek
to impeach a defendant's exculpatory story, told for the

8

first time at trial, by cross-examining the defendant about his failure to have told the story after receiving <u>Miranda</u> warnings at the time of his arrest. <u>Doyle</u>, supra, 426 U.S. at 611. The District Court's ruling must be reversed.

III

Furlong has once been put in jeopardy on the felony theft charge. The State's failure to present sufficient evidence to support the charge precludes a retrial on the same charge. Burks v. United States (1978), 437 U.S. 1, 11, 98 S.Ct. 2141, 57 L.Ed.2d 1.

Defendant's conviction is reversed, and the case dismissed.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____

_____
Justices