2013 APR 22 AM 10:30
COURT OF APPEALS DIV I

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) | No. 67524-9-I |
| v. | ) | |
| RATTANA KEO PHUONG, | ) | PUBLISHED OPINION |
| Appellant. | ) | FILED: April 22, 2013 |

DWYER, J. — Pursuant to a jury's verdicts, Rattana Keo Phuong was convicted of unlawful imprisonment-domestic violence and attempted rape in the second degree-domestic violence. On appeal, he contends that insufficient evidence supports his conviction of unlawful imprisonment because the restraint employed in committing the unlawful imprisonment offense was "incidental" to the rape offense. Contrary to Phuong's contention, however, there is no Fourteenth Amendment due process right to be convicted of unlawful imprisonment only where the restraint employed in committing the offense is not incidental to a separately charged offense. Our legislature has not required as an element of unlawful imprisonment that the restraint be "not incidental" to another offense. Nor has our Supreme Court restricted the statutory definition of unlawful imprisonment to only those offenses where the restraint is "not incidental" to

another offense. Moreover, contrary to Phuong's contention, our Supreme Court has never held that such a Fourteenth Amendment due process right exists. A constitutionally sufficient quantum of evidence supports Phuong's unlawful imprisonment conviction; accordingly, his due process challenge fails.

Phuong additionally asserts that the information charging him with unlawful imprisonment was deficient because it did not include as an element of the offense the statutory definition of "restrain." Our Supreme Court has recently rejected a contention that a definitional concept constituted an essential element of an offense; thus, following the court's analysis in that case, we reject Phuong's contention in this case.

Finally, Phuong contends that his trial counsel's performance was deficient because his attorney did not argue, at sentencing, that the attempted rape and unlawful imprisonment offenses constituted the same criminal conduct. Because a reasonable probability exists that, had his counsel so argued, the court would have ruled that the offenses constituted the same criminal conduct for purposes of calculating Phuong's offender score, this claim has merit. Accordingly, while we affirm Phuong's convictions, we also remand the cause to the superior court for a new sentencing hearing.

I

In October 2001, Samouen Liem and Phuong married in Liem's native country of Cambodia. Liem arrived in the United States in early 2003. Liem and Phuong had a daughter, A., in 2003, and a son, D., in 2006. Their marriage began to collapse in early 2007. Phuong sought a divorce and moved in with his

-2-

parents. During this time, D. lived with Liem and A. lived with Phuong in his parents' home.

On September 15, 2009, Liem arranged to drop off D. at Phuong's parents' home and to visit A. Although Phuong's parents were usually present during such visits, Liem noticed upon her arrival that they were not at home. Liem fed the children and spoke with Phuong for a few minutes. As she prepared to leave, Phuong called Liem a "hooker" and asked her to go upstairs and "have sex" with him. Liem refused and left the house.

Phuong followed Liem out of the house and attempted to grab her as she started the engine of her car. He stated that he wanted "sex" and attempted to pull her from the car. Liem yelled for the children to help. Despite the children's pleas that Phuong not hurt Liem, Phuong dragged Liem out of the car, through the garage, and into the house.

Phuong pulled Liem upstairs to his bedroom, while Liem kicked and screamed and the children pleaded for their father to stop. Phuong then pulled Liem into his bedroom and locked the door. He attempted to force Liem onto a mattress on the floor of the bedroom. Phuong tried to pull down Liem's pants, tearing the crotch seam of the pants. He removed his shirt and attempted to get on top of Liem, while she kicked and fought back. Phuong successfully prevented Liem from escaping, pinning her down by her wrists and telling her that he still loved her and wanted to have sex with her. Liem later testified at trial that Phuong did not stop until he heard his neighbor knocking on the door downstairs.

When Phuong left to answer the door, Liem quickly left the bedroom and went into the bathroom to fix her torn pants. She heard Phuong tell the neighbor that nothing had happened. Liem did not call out to the neighbor because she was afraid. Liem ran into Phuong as she attempted to leave the house. Phuong told her to leave the ripped pants behind to be fixed, but Liem declined. She left the house with both of the children.

As she drove away, Liem telephoned her boyfriend, Brian Armstrong, to tell him what had happened. She was crying and scared as she recounted the incident. Later during Liem's drive home, Phuong called her to apologize. Telephone records admitted at trial showed that Phuong called Liem 16 times during the six hours after the incident. Ultimately, Armstrong convinced Liem to report the matter to the police.

Phuong's neighbor, Audrey Germanis, would later testify that she became involved in the incident after A. and D. ran across the street to her home crying and screaming. She offered to help the children, who told her that their parents were fighting. Germanis followed A. into the house and loudly called Phuong's name until he emerged five to seven minutes later. According to Germanis, Phuong was shirtless and breathing "very heavily." Phuong told Germanis that he and Liem were "just up there making a little love" and then escorted Germanis from the home.

Phuong was charged with attempted rape in the second degree-domestic violence and unlawful imprisonment-domestic violence. The jury convicted Phuong as charged, and the trial court imposed a standard range sentence.

- 4 -

Phuong appeals.

II

Phuong contends that insufficient evidence supports his conviction of unlawful imprisonment. Because a rational trier of fact could have found the elements of unlawful imprisonment beyond a reasonable doubt, thus satisfying the Fourteenth Amendment guarantee of due process, we disagree.

When reviewing a challenge to the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). The purpose of this standard of review is to ensure that the trial court fact finder "rationally appl[ied]" the constitutional standard required by the due process clause of the Fourteenth Amendment, which allows for conviction of a criminal offense only upon proof beyond a reasonable doubt. Jackson, 443 U.S. at 317-18; In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). In other words, the Jackson standard is designed to ensure that the defendant's due process right in the trial court was properly observed.

Here, Phuong asserts that the State proffered insufficient evidence to support his conviction of unlawful imprisonment. As determined by our state legislature, "[a] person is guilty of unlawful imprisonment if he or she knowingly restrains another person." RCW 9A.40.040(1). "'Restrain' means to restrict a person's movements without consent and without legal authority in a manner

- 5 -

which interferes substantially with his or her liberty." RCW 9A.40.010(6). As relevant here, restraint is "without consent" where it is accomplished by "physical force, intimidation, or deception." RCW 9A.40.010(6)(a).

Applying the Jackson standard, as we must, the evidence is clearly sufficient to support Phuong's unlawful imprisonment conviction. Phuong dragged Liem from her car, into his parents' house, and upstairs to his bedroom. He then pushed Liem onto his bed and pinned her down by her wrists in order to thwart her attempts to escape. Viewing these facts in the light most favorable to the State, a rational trier of fact could determine that Phuong knowingly restrained Liem as defined by our state legislature. See RCW 9A.40.010(6), .040(1). Thus, Phuong's Fourteenth Amendment due process right to be convicted only upon proof beyond a reasonable doubt was properly observed in the trial court. The evidence is sufficient to support his unlawful imprisonment conviction.

III

Nevertheless, Phuong contends, and the dissent agrees, that insufficient evidence supports an unlawful imprisonment conviction where the restraint employed in committing the offense is "incidental" to a separately charged offense. He asserts that, pursuant to our Supreme Court's decision in State v. Green, 94 Wn.2d 216, 616 P.2d 628 (1980) (Green),[1] due process requires more

---

[1] This citation is perhaps the most frequently made in state appellate court opinions. Accordingly, we will refer to this case—in the short form—as Green (the short form citation used in all other cases). But this citation is to the second Supreme Court opinion in that case. We will

than "incidental restraint" to support such a conviction. But our Supreme Court has never so held. Rather, the court has considered the incidental restraint concern in the context of the so-called "kidnapping merger rule" and, even so, has explicitly rejected this as a component of the law in our state. Similarly, our legislature has never defined the restraint-based crimes of kidnapping and unlawful imprisonment[2] to require as an element of those offenses that the restraint employed be "not incidental" to a separately charged offense. Accordingly, Phuong's assertion that insufficient evidence supports his unlawful imprisonment conviction because the restraint employed was "incidental" to another offense is wholly without merit.

## A.

### The incidental restraint concern and the meaning of *Green*

The incidental restraint concern derives from the potential for prosecutorial abuse where the offense of kidnapping is broadly defined, thus encompassing

---

refer to the Supreme Court's first decision, State v. Green, 91 Wn.2d 431, 588 P.2d 1370 (1979), as Green I.

[2] Most of the cases discussed herein address the incidental restraint concern in the context of the offense of kidnapping. Both the offense of kidnapping and the offense of unlawful imprisonment, however, require that the perpetrator "restrain" another person. See RCW 9A.40.020, .030 (setting forth the statutory elements of kidnapping); RCW 9A.40.040 (setting forth the statutory elements of unlawful imprisonment); RCW 9A.40.010(1) (defining "abduct," an element of kidnapping, as requiring the restraint of a person); RCW 9A.40.010(6) (defining "restrain").

Thus, Phuong urges us to apply the reasoning of those kidnapping cases to our review of his unlawful imprisonment conviction. See State v. Vladovic, 99 Wn.2d 413, 434 n.5, 662 P.2d 853 (1983) (Utter, J., concurring in part, dissenting in part) ("Some courts have extended the rule to the crime of unlawful imprisonment since that offense is basically a lesser form of kidnapping. Others, however, have been unwilling to go even this far." (citations omitted)). Indeed, a similar argument has previously been entertained by this court in an appeal from an unlawful imprisonment conviction. State v. Washington, 135 Wn. App. 42, 143 P.3d 606 (2006). Thus, Phuong's request is analytically reasonable. We will refer herein to the offenses of kidnapping and unlawful imprisonment collectively as "restraint-based crimes" for the purposes of our analysis.

other criminal offenses. The concern[3] recognizes that such broad definitions "could literally overrun several other crimes, notably robbery and rape, and in some circumstances assault, since detention and sometimes confinement, against the will of the victim, frequently accompany these crimes." People v. Levy, 15 N.Y.2d 159, 164, 204 N.E.2d 842 (1965). Because "kidnapping is recognized as one of the most serious crimes and is punished as such," the additional punishment imposed where kidnapping is charged "is far from inconsequential." State v. Vladovic, 99 Wn.2d 413, 429, 662 P.2d 853 (1983) (Utter, J., concurring in part, dissenting in part). "In order to subject the defendant to those penalties, a kidnaping [may] be charged where there was a rape, even though the abduction or restraint involved was merely incidental to the rape and involved no increased risk of harm." State v. Johnson, 92 Wn.2d 671, 676, 600 P.2d 1249 (1979). Thus, the concern is that a "literal reading" of a kidnapping statute "'would permit a prosecutor to aggravate the charges against any assailant, robber, or rapist by charging the literal violation of the kidnapping statute which must inevitably accompany each of those offenses.'" State v. Green, 91 Wn.2d 431, 453, 588 P.2d 1370 (1979) (Green I) (Utter, J., dissenting) (quoting People v. Adams, 34 Mich.Ct.App. 546, 560, 192, N.W.2d 19 (1971), modified by 389 Mich. 222, 205 N.W.2d 415 (1973)).

Accordingly, various state courts have addressed the incidental restraint

---

[3] We note that some appellate court decisions have referred to the "incidental restraint doctrine" in addressing the matter that we refer to herein as the "incidental restraint concern." A "doctrine," however, is legal principle that is widely adhered to. The term inaccurately describes a concern that is addressed in a variety of different ways.

concern based upon "an aversion to prosecuting a defendant on a kidnapping charge in order to expose him to the heavier penalty thereby made available," People v. Cassidy, 40 N.Y.2d 763, 765, 358 N.E.2d 870 (1976), where "the abduction or restraint involved was merely incidental" to another charged offense. Johnson, 92 Wn.2d at 676. The approaches taken by various courts to address this concern can be grouped into four categories. First, courts in some states rely upon a legislative enactment demonstrating the legislature's recognition of the concern where offenses overlap, either with regard to kidnapping specifically or to all offenses generally. See, e.g., People v. Pellot, 105 A.D.2d 223, 231, 483 N.Y.S.2d 409 (N.Y. App. Div. 1984) (recognizing that in enacting New York's kidnapping statutes "the Legislature was fully cognizant of the problems caused by the broad language of the single crime provision of the former kidnapping statute" and "intended to alleviate the uncertainties inherent in application of the judicially created merger doctrine by establishing a precise definition of the crime of kidnapping in the first degree"); cf. State v. Logan, 60 Ohio.St.2d 126, 127-28, 397 N.E.2d 1345 (1979) (applying, in the context of kidnapping, Ohio's "multiple-count" statute, which requires separate animus to support multiple convictions where a defendant is accused of multiple offenses of a similar kind).

Second, courts in other jurisdictions construe their kidnapping statutes, relying upon legislative history or other principles of statutory construction, to give the offense a more restricted meaning. See, e.g., Gov't of Virgin Islands v. Berry, 604 F.2d 221, 225-29 (3d Cir. 1979) (determining the intent of the Virgin Islands

legislature by relying upon the principle that all laws should receive a sensible construction); Alam v. State, 776 P.2d 345, 348-49 (Alaska App. 1989) (concluding that the legislature's commentary to the kidnapping statute demonstrated that it did not intend the statute to be interpreted as broadly as the literal language might indicate); Adams, 389 Mich. at 230 (holding that Michigan's kidnapping statute "requires the interpolation of the historical concept of asportation to render it constitutional").

Third, courts in still other states have adopted the "kidnapping merger rule." See, e.g., State v. Lee, 128 P.3d 1179, 1184-86 (Utah 2006) (recognizing a merger rule applicable to kidnapping that requires the movement or confinement to be not incidental to another offense); Cassidy, 40 N.Y.2d at 768 (holding that the merger doctrine precluded conviction of second-degree kidnapping where the abduction was incidental to other offenses). This rule is "intended to preclude conviction for kidnapping based on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them." Cassidy, 40 N.Y.2d at 767. While differing from traditional merger analysis, the kidnapping merger rule provides that "forced movement of a person cannot support a conviction for kidnapping if it is merely incidental to some other offense." Vladovic, 99 Wn.2d at 428 (Utter, J., concurring in part, dissenting in part).

Finally, courts in the remaining states have simply acknowledged the legislature's primacy in defining criminal offenses and deferred to the legislature's

determination as to whether the restraint employed in committing a kidnapping must be "not incidental" to another charged offense.[4] See, e.g., State v. Denton, 319 Wis.2d 718, 739, 768 N.W.2d 250 (2009) (noting that "Wisconsin law recognizes that a defendant may be prosecuted for kidnapping even when the kidnapping is incidental to another charged crime"); State v. Smith, 228 Mont. 258, 263-64, 742 P.2d 451 (1987) (holding that, pursuant to Montana's kidnapping statute, a "specific period of restraint is not an element of the offense"); State v. Padilla, 106 Ariz. 230, 232, 474 P.2d 821 (1970) (rejecting defendants' assertion that the evidence was insufficient to sustain their kidnapping convictions because movement of the victim was minimal). Significantly, where the nonincidental nature of the restraint employed does not constitute a statutory element of the offense, neither the federal courts nor the courts of any other state have determined that the incidental restraint concern implicates the Fourteenth Amendment due process right to be convicted only upon proof beyond a reasonable doubt.

Phuong contends, however, that the incidental restraint concern does, in fact, implicate this Fourteenth Amendment due process right. He asserts that our Supreme Court so held in Green, 94 Wn.2d 216, and, in support of this assertion, cites to several appellate court opinions similarly interpreting the Green decision. Phuong is correct that several decisions from Division Two of our court have assessed the sufficiency of the evidence supporting a kidnapping conviction based upon whether the restraint employed was "incidental" to another charged

---

[4] As explained below, this is the approach ultimately settled upon by our Supreme Court.

offense.[5]  See State v. Elmore, 154 Wn. App. 885, 228 P.3d 760 (2010); In re Pers. Restraint of Bybee, 142 Wn. App. 260, 175 P.3d 589 (2007); State v. Saunders, 120 Wn. App. 800, 86 P.3d 232 (2004); State v. Korum, 120 Wn. App. 686, 86 P.3d 166 (2004), aff'd in part, rev'd in part, 157 Wn.2d 614, 141 P.3d 13 (2006).[6]  However, as a review of the decisional authority will demonstrate, the Division Two opinions relied upon by Phuong are, quite simply, wrongly decided. In fact, our Supreme Court has never—either in Green or in any other opinion—decided a Fourteenth Amendment due process case based upon the incidental restraint concern.

In Green, our Supreme Court reconsidered, in light of the United States Supreme Court's decision in Jackson, 443 U.S. 307, whether sufficient evidence of the element of kidnapping supported the defendant's conviction of aggravated murder in the first degree.[7]  94 Wn.2d at 219.  In assessing the sufficiency of the evidence, the court in Green I had applied Washington's then-prevailing "substantial evidence" test, limiting its review "to a determination of whether the

---

[5] To be sure, Washington appellate court opinions have not been uniform in so holding. Opinions from the other two divisions of our court have previously rejected the contention urged by Phuong herein.  See State v. Grant, No. 65172-2-I, 2012 WL 7548988 (Wash. Ct. App. Dec. 24, 2012) (Division I); State v. Butler, 165 Wn. App. 820, 269 P.3d 315 (2012) (Division III).

[6] Because the State did not properly seek Supreme Court review of the appellate court's decision that the evidence on the kidnapping counts was insufficient because the restraint employed was incidental to that employed in the robberies, our Supreme Court refused to address that issue in reviewing the Court of Appeals decision in Korum.  157 Wn.2d at 623-25.

[7] Murder in the first degree, punishable by life imprisonment, was elevated to aggravated murder in the first degree, the punishment for which was the mandatory imposition of the death penalty, where the State proved that a person had committed murder in the first degree accompanied by additional statutory circumstances.  Green I, 91 Wn.2d at 437-38. One such circumstance was that the defendant had "committed the murder in the course of or in furtherance of the crime of rape or kidnapping or in immediate flight therefrom." Green I, 91 Wn.2d at 438 (quoting former RCW 9A.32.045(7) (1981)).  Thus, depending on how the crime was charged, the offenses of kidnapping and rape could be elements of the offense of aggravated murder in the first degree.

State has produced *substantial* evidence tending to establish circumstances from which a jury could reasonably infer the fact to be proved."[8] 91 Wn.2d at 442. The court concluded that there existed "substantial evidence from which the jury could infer appellant killed while in the course of or in furtherance of the statutorily defined offense of kidnapping." 91 Wn.2d at 444. In light of Jackson, however, our Supreme Court on reconsideration held in Green that on review the proper test "is whether, after viewing the evidence most favorable to the State, *any rational trier of fact* could have found the essential elements of kidnapping *beyond a reasonable doubt*." 94 Wn.2d at 221-22. The substantial evidence standard applied in Green I, the court determined, could not "be equated with Jackson's 'reasonable doubt' rule." Green, 94 Wn.2d at 222. Thus, the court revisited the issue of whether the evidence was sufficient to support a determination that Green had committed murder in the course of kidnapping, as necessary to support his conviction for aggravated murder in the first degree. Green, 94 Wn.2d at 219, 222.

As relevant here, the court addressed whether the kidnapping element was supported by "sufficient evidence of restraint by means of secreting the victim" in a place where she was unlikely to be found. Green, 94 Wn.2d at 225.[9]

---

[8] Importantly, the primary issue in Green I was not the sufficiency of the evidence supporting Green's aggravated murder conviction; rather, the primary issue addressed by the court was the constitutionality of the aggravated murder statute, which required the mandatory imposition of the death penalty upon conviction of that offense. See 91 Wn.2d at 444-47. The court struck down the mandatory death penalty provision of the statute. Green I, 91 Wn.2d at 446-47. This was not at issue upon reconsideration in Green.

[9] The offense of kidnapping is committed where a person "intentionally abducts another person." RCW 9A.40.020(1) (kidnapping in the first degree); RCW 9A.40.030(1) (kidnapping in the second degree). "'Abduct' means to restrain a person by either (a) secreting or holding him or

- 13 -

The State asserted that, after stabbing his eight-year-old victim, Green had "secreted" her in the exterior loading area of an apartment building. Green, 94 Wn.2d at 226. The loading area, however, was "plainly visible" from the outside, contained a door to the interior of the building "only a few feet" from where Green was observed with the victim, and was "near the bottom of the back stairway which led to all of the upstairs apartments." Green, 94 Wn.2d at 226. Thus, there was clearly public access to the loading area. Green, 94 Wn.2d at 226. Moreover, only two to three minutes elapsed between the time that the victim first screamed and the time that Green was observed with the victim in the loading area. Green, 94 Wn.2d at 226. The court concluded that, "[c]onsidering the unusually short time involved, the minimal distance the victim was moved . . . , the location of the participants when found, the clear visibility of that location from the outside as well as the total lack of any evidence of actual isolation from open public areas," "under the Jackson test, no rational trier of fact could have found *beyond a reasonable doubt*, that the victim had been restrained by means of *secreting* her in a place *where she was not likely to be found.*" Green, 94 Wn.2d at 226.[10]

Then, citing its decision in Johnson, the court continued:

> Moreover, although appellant lifted and moved the victim to the apartment's exterior loading area, it is clear these events were actually an integral part of and not independent of the underlying

---

her in a place where he or she is not likely to be found, or (b) using or threatening to use deadly force." RCW 9A.40.010(1). These current statutory provisions are materially identical to those applied in Green. See 94 Wn.2d at 224-25.

[10] The court also concluded that, contrary to its decision in Green I, there was no "substantial evidence" of restraint by means of secreting the victim. Green, 94 Wn.2d at 226.

- 14 -

homicide. While movement of the victim occurred, the mere *incidental* restraint and movement of a victim which might occur during the course of a homicide are not, standing alone, indicia of a true kidnapping. See State v. Johnson, 92 Wn.2d 671, 676, 600 P.2d 1249 (1979).

Green, 94 Wn.2d at 226-27. It is this language that, according to Phuong and the dissent, establishes a Fourteenth Amendment due process right to proof beyond a reasonable doubt of restraint not incidental to a separately charged offense in order to support a conviction of a restraint-based crime. The origin of this language in the court's jurisprudence, however, demonstrates that our Supreme Court did not create as an element of restraint-based crimes the requirement that the restraint be "not incidental" to another offense.[11] Rather, our discussion below—in which we trace the court's use of the incidental restraint language through its opinions in Green I, Johnson, and Green—makes clear that this language does not implicate the federal due process right.

The incidental restraint language first appears in our Supreme Court's jurisprudence in Green I itself.[12] There, Justice Utter, in dissent, recognized the incidental restraint concern addressed in out-of-state judicial decisions and

---

[11] Indeed, the Court in Jackson made clear that the sufficiency of the evidence test set forth therein applied only to criminal offenses as defined by state legislatures. 443 U.S. at 324 n.16 (holding that "the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law"). Accordingly, Jackson does not suggest that, in order to review the sufficiency of the evidence supporting a conviction, additional elements should be judicially appended to the statutory definition of the criminal offense. This is pertinent because it was the announcement of the Jackson test that compelled our Supreme Court to reconsider its Green I decision in the first instance.

[12] An understanding of the chronology of the judicial authority cited herein is helpful in appreciating the significance of that authority. Green I, 91 Wn.2d 431, was filed by our Supreme Court in January 1979. The United States Supreme Court's decision in Jackson, 443 U.S. 307, which precipitated our Supreme Court's reconsideration of Green I, was filed in June 1979. Our Supreme Court thereafter filed its decision in Johnson, 92 Wn.2d 671, in October 1979. Finally, after granting reconsideration of Green I, the court filed its opinion in Green, 94 Wn.2d 216, in August 1980.

commenced his campaign for adoption of the kidnapping merger rule to ameliorate that concern. Green I, 91 Wn.2d at 448-61 (Utter, J., dissenting). Justice Utter criticized the majority decision, stating that it "seems to make kidnapping a comprehensive crime applicable to nearly all crimes against the person, overlapping and rendering superfluous all statutes on robbery, rape, and assault." Green I, 91 Wn.2d at 449 (Utter, J., dissenting). He noted that "[a] number of courts have been similarly disturbed with the potential for [resulting prosecutorial] abuse, and have therefore refused to find a kidnapping inherent in every crime against the person." Green I, 91 Wn.2d at 452 (Utter, J., dissenting). Justice Utter then explained the manner in which other courts had addressed the incidental restraint concern, citing, in particular, to Adams, 34 Mich.Ct.App. 546, modified by 389 Mich. 222; Cassidy, 40 N.Y.2d 763; and Levy, 15 N.Y.2d 159.[13]

In Adams, the Michigan Court of Appeals determined that its state's kidnapping statute was unconstitutionally vague; because its language encompassed "virtually any assault, any battery, any rape, or any robbery," the court concluded that the statute "confer[red] upon judges or jurors an unlimited discretion to determine who shall be punished for certain conduct." 34 Mich.Ct.App. at 560, 559. The court thus construed the statute "to withstand constitutional challenge," requiring asportation of the victim to support a conviction of kidnapping. Adams, 34 Mich.Ct.App. at 561, 567. The Michigan

---

[13] As we further discuss below, each of these decisions was later cited by the majority in Green in support of the incidental restraint language that Phuong contends is pertinent to a sufficiency of the evidence analysis. See Green, 94 Wn.2d at 227-28 (citing People v. Adams, 389 Mich. 222, 205 N.W.2d 415 (1973); Cassidy, 40 N.Y.2d 763; and Levy, 15 N.Y.2d 159).

Supreme Court affirmed this part of the appellate court's decision, agreeing that the kidnapping statute "require[d] the interpolation of the historical concept of asportation to render it constitutional." Adams, 389 Mich. at 230. The court held that, to support a conviction of kidnapping, the confinement and asportation of the victim must not be "merely incidental to the lesser underlying crime." Adams, 389 Mich. at 236.

Although Justice Utter briefly cited the Michigan appellate court's decision in Adams, he vociferously advocated for adoption of the New York approach to the incidental restraint concern described in Cassidy and Levy. Green I, 91 Wn.2d at 460 (Utter, J., dissenting) ("I would follow the unassailable analysis that New York has developed."). Justice Utter explained that the New York Court of Appeals had, following the adoption of a kidnapping statute virtually identical to our own, "reaffirmed its prior finding of *merger of kidnapping* into other offenses when the technical 'kidnapping' is *incidental* to the commission of another crime." Green I, 91 Wn.2d at 458 (Utter, J., dissenting) (emphasis added).[14] He continued, quoting Cassidy, 40 N.Y.2d at 767-68:

> "The *merger doctrine* was of judicial origin and was based on an aversion to prosecuting a defendant on a kidnapping charge in order to expose him to the heavier penalty thereby made available, where the period of abduction was brief, the criminal enterprise in its entirety appeared as no more than an offense of robbery or rape, and there was lacking a genuine 'kidnapping' flavor . . .

---

[14] Justice Utter would later distinguish between "general merger"—"the rule that, absent an express indication of contrary legislative intent, an offense which is an element of and merely incidental to another offense merges and is not separably punishable"—and "kidnapping merger"—"the rule that forced movement of a person cannot support a conviction for kidnapping if it is merely incidental to some other offense." Vladovic, 99 Wn.2d at 427, 428 (Utter, J., concurring in part, dissenting in part). It is this "kidnapping merger" rule that Justice Utter urged the court to adopt in Green I.

. . .

> The *merger doctrine* is intended to preclude conviction for kidnapping based on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them."

Green I, 91 Wn.2d at 458-59 (Utter, J., dissenting) (emphasis added) (alteration in original). Justice Utter concluded:

> I would hold that a kidnapping is chargeable under our statute only where there is an abduction which is separate from, and independent of, another crime. Restraint and incidental movement of a victim during a robbery, rape, or assault *are not indicia of a genuine kidnapping*; they are, instead, generally a necessary and integral part of the robbery, rape, or assault itself. Restraint and movement which do not exceed that reasonably necessary to complete one of those crimes should, I believe, be construed to be inherent in the crime, *resulting in a merger which extinguishes any separate kidnapping offense.*

Green I, 91 Wn.2d at 460-61 (Utter, J., dissenting) (emphasis added).[15]

Justice Utter then explained his objection to the affirmance of Green's aggravated murder conviction, based on an underlying kidnapping, in terms of the incidental restraint concern. He noted that the "lesser-greater distinction in applying the merger doctrine" is premised upon a belief that "it is unfair and unreasonable to allow a crime to be bootstrapped into one more serious." Green I, 91 Wn.2d at 461 n.11 (Utter, J., dissenting). This would not happen in "the ordinary homicide case," he explained, "because the murder conviction is the more serious, and it is unaffected by the kidnapping charge and conviction."

---

[15] Lest these portions of Justice Utter's dissent fail to adequately convey that he considered the New York approach to be one of merger, footnote 11 of his dissent, in which he explicitly describes that approach as a "merger approach"—and uses the term "merger" *nine times*—should resolve any such confusion. See Green I, 91 Wn.2d at 461 n.11 (Utter, J., dissenting).

Green I, 91 Wn.2d at 461 n.11 (Utter, J., dissenting). Justice Utter then contrasted that circumstance with the one before the court: "However, here the kidnapping was used to bootstrap the murder itself into an ever more serious crime, aggravated murder. This is precisely the result that *the merger doctrine*, even when limited by the lesser-greater distinction, was designed to prevent." Green I, 91 Wn.2d at 461 n.11 (Utter, J., dissenting) (emphasis added).

Justice Utter, however, was not the only justice on the court who recognized the incidental restraint concern as problematic in Green I. Rather, Justice Stafford—*who would just seventeen months later author the majority opinion in Green*—agreed with Justice Utter that the majority's construction of the kidnapping statute would "lead to absurd results if nonsubstantial restraint of a victim is characterized as kidnapping." Green I, 91 Wn.2d at 447 (Stafford, J., dissenting in part). Using the same language as that recognized by Justice Utter to implicate the kidnapping merger doctrine, Justice Stafford agreed that "the mere *incidental* restraint and movement of a victim which might occur during the course of a murder *are not indicia of genuine kidnapping. At best they are a part of the murder itself.*" Green I, 91 Wn.2d at 448 (Stafford, J., dissenting in part) (emphasis added).

Nine months after its decision in Green I, the court filed its decision in Johnson, the opinion later cited by the court in support of the "incidental restraint" language employed in Green. Johnson—a unanimous decision authored by Justice Rosellini—was our Supreme Court's first foray into merger law, traditionally conceived of as addressing a double jeopardy concern. See 92

Wn.2d at 678 (recognizing that its conclusion regarding merger of the offenses therein was "strengthened when it is observed that constitutional double jeopardy provisions forbid double punishment"). There, the defendant was convicted of two counts each of rape in the first degree, assault in the first degree, and kidnapping in the first degree. Johnson, 92 Wn.2d at 672. In order to obtain a conviction of rape in the first degree, the prosecutor was required to prove "not only that the defendant committed rape, but that the rape was accompanied by an act which is defined as a separate crime elsewhere in the criminal statutes." Johnson, 92 Wn.2d at 675. Thus, as in Green, the offense of kidnapping constituted an element of a separately charged offense.[16] The defense asserted that "any such attendant crime should not be a subject for independent prosecution." Johnson, 92 Wn.2d at 675.

In analyzing the defendant's contention, the court noted that the "former rape statute did not distinguish different degrees of rape, and a single penalty was provided, no matter how aggravated the rape might have been." Johnson, 92 Wn.2d at 675-76. As a result, the State would add charges where aggravating circumstances were present in order to ensure a punishment commensurate with the crime. Johnson, 92 Wn.2d at 676. This "pyramiding" of charges, the court observed, often resulted in excessive punishments, particularly "where broadly worded kidnaping statutes were employed":

---

[16] In Green, however, the only offense charged was aggravated murder in the first degree; the State did not seek to obtain a separate conviction of kidnapping. 94 Wn.2d at 219. In contrast, in Johnson, the State charged the defendant with multiple offenses, including kidnapping, which also served as an element of the separately charged offense of rape in the first degree. 92 Wn.2d at 672, 674.

> In order to subject the defendant to those penalties, a kidnaping would be charged where there was a rape, even though the abduction or restraint involved was merely incidental to the rape and involved no increased risk of harm. A number of courts perceived that such employment of kidnaping statutes was not within the legislative intent.

Johnson, 92 Wn.2d at 676 (citing Levy, 15 N.Y.2d 159; Adams, 34 Mich.Ct.App. 546; People v. Daniels, 71 Cal.2d 1119, 459 P.2d 225 (1969)). Thus, the court in Johnson recognized the incidental restraint concern emphasized by Justice Utter and Justice Stafford in Green I.

The court determined that, in enacting the current criminal code, the legislature had "removed the necessity or occasion for the pyramiding of charges or the misuse of kidnaping charges by creating more clearly defined degrees of crimes, as in the rape and kidnaping statutes, and specifying the types of conduct *incidental to* the crime which will call forth more severe penalties." Johnson, 92 Wn.2d at 676 (emphasis added). In other words, the conduct in Johnson that constituted kidnapping was "incidental to" the offense of rape in the first degree because that conduct, an element of the rape offense, increased the degree of the rape offense and, thus, the severity of punishment upon conviction of that offense. The court concluded that "the legislature intended that punishment for first-degree rape should suffice as punishment for crimes proven in aid of the conviction, which are *incidental to and elements of* the central crime." Johnson, 92 Wn.2d at 678 (emphasis added). Once proof of kidnapping and assault was accepted by the jury, "those crimes *became merged* in the completed crime of first-degree rape." Johnson, 92 Wn.2d at 681 (emphasis

added) (footnote omitted). The court thus affirmed the defendant's rape convictions but remanded to the trial court to strike the kidnapping and assault convictions and sentences. Johnson, 92 Wn.2d at 684-85.

Having begun to grapple with the incidental restraint concern and the kidnapping merger rule in Green I and Johnson, the court reconsidered its sufficiency of the evidence decision in Green I based upon the then-recently pronounced Jackson standard of review. See Green, 94 Wn.2d at 219. As explained above, upon applying the Jackson standard, the court concluded that "no rational trier of fact could have found *beyond a reasonable doubt*, that the victim had been restrained by means of *secreting* her in a place *where she was not likely to be found*." Green, 94 Wn.2d at 226. Having determined that the quantum of proof admitted at trial was insufficient to meet the Fourteenth Amendment due process proof beyond a reasonable doubt requirement, the court's work was at an end. Nevertheless, the court then uttered the dictum that, according to Phuong and the dissent, created a novel Fourteenth Amendment due process right applicable only to restraint-based offense convictions:

> Moreover, although appellant lifted and moved the victim to the apartment's exterior loading area, it is clear these events were actually an integral part of and not independent of the underlying homicide. While movement of the victim occurred, *the mere incidental restraint and movement of a victim which might occur during the course of a homicide are not, standing alone, indicia of a true kidnapping.* See State v. Johnson, 92 Wn.2d 671, 676, 600 P.2d 1249 (1979).

Green, 94 Wn.2d at 226-27 (emphasis added).

Thus, Justice Stafford, the author of the majority in Green, employed the

same language that he had used in his separate opinion in Green I to describe the incidental restraint concern upon reconsideration of that very case. See Green I, 91 Wn.2d at 448 (Stafford, J., dissenting in part) (agreeing with Justice Utter's dissent that "*the mere incidental restraint and movement of a victim which might occur during the course of a murder are not indicia of genuine kidnapping*" (emphasis added)). Both Justice Utter and Justice Stafford, in Green I, recognized the incidental restraint concern to be a matter of kidnapping merger. Neither justice suggested that the concern implicated the Fourteenth Amendment due process right to be convicted only upon proof beyond a reasonable doubt.[17]

Moreover, the majority in Green cited Johnson for the proposition that "the mere *incidental* restraint and movement of a victim which might occur during the course of a homicide are not, standing alone, indicia of a true kidnapping." 94 Wn.2d at 227. As explained above, Johnson did not address the sufficiency of the evidence supporting the defendant's convictions therein. Rather, indicating that the constitutional provision implicated was the double jeopardy clause, the court in Johnson clearly held that the defendant's kidnapping and assault convictions merged into his first-degree rape convictions. 92 Wn.2d at 681 (holding that, when the proof of kidnapping and assault "was accepted by the jury, those crimes became merged in the completed crime of first-degree rape" (footnote omitted)). Furthermore, the majority in Green thereafter cited Adams,

---

[17] Significantly, Jackson was filed between the filing dates of Green I and Green. Thus, the language deemed by Phuong and the dissent to have created a new federal due process right applicable only to restraint-based offenses—language which originated in the separate opinions of Justice Utter and Justice Stafford in Green I—cannot reasonably be considered to have resulted from the Jackson decision.

No. 67524-9-I/24

389 Mich. 222, Cassidy, 40 N.Y.2d 763, and Levy, 15 N.Y.2d 159—cases cited by Justice Utter in dissent in Green I in advocating the adoption of the kidnapping merger rule and cited in Johnson to support the court's unanimous merger decision therein.[18]

The conclusion is inescapable that our Supreme Court did not, in Green, purport to create a novel Fourteenth Amendment due process right applicable only to restraint-based offenses. What, then, was the court's purpose in including the incidental restraint language deemed so significant by Phuong and the dissent? The answer lies in Justice Rosellini's dissent in Green, in which he, the author of the court's decision in Johnson, sheds light on the relevance of the Johnson decision to the court's disposition of Green.[19] Justice Rosellini concluded that the offense of kidnapping, as defined by our state legislature, clearly encompassed the defendant's actions:

> It would seem clear to me that the kind of actions engaged in by the defendant in this case are precisely the kind of actions which the legislature intended to punish under the kidnapping statute. If the kidnapping did not culminate in the death of the victim, the only crime would be kidnapping, first degree. If the victim died as a result of the defendant's actions, the crime would be kidnap-murder.

---

[18] The court thereafter announced its holding, which did not include language regarding the incidental nature of the kidnapping element: "We hold that kidnapping by means of secreting or holding the victim in a place where she was not likely to be found has not been established either by substantial evidence or by the standard of proof required by Jackson v. Virginia, supra." Green, 94 Wn.2d at 228.

[19] Recognizing that the court had granted reconsideration of its first decision in this case in response to the United States Supreme Court's opinion in Jackson, Justice Rosellini explained that he saw "no difference in substance between [the Jackson] test and the one which we have consistently applied." Green, 94 Wn.2d at 241 (Rosellini, J., dissenting). Accordingly, he saw "no reason to depart from the position which [the court] took upon the first hearing of this case with respect to the sufficiency of the evidence." Green, 94 Wn.2d at 241 (Rosellini, J., dissenting). Thus, he believed that the court should adhere to its decision in Green I. Green, 94 Wn.2d at 243 (Rosellini, J., dissenting).

- 24 -

Green, 94 Wn.2d at 242 (Rosellini, J., dissenting). Relying on the court's unanimous decision in Johnson, he explained that "the crime of kidnapping *would merge* with that of murder if the latter were proven to the jury's satisfaction." Green, 94 Wn.2d at 242 (Rosellini, J., dissenting) (emphasis added).

Thus, the question was not whether sufficient evidence was proffered from which a jury could find beyond a reasonable doubt that the offense was committed; indeed, Justice Rosellini had already explained that he believed the defendant's actions clearly fell within the statutory definition of the offense. Rather, the question was whether, *given that the kidnapping was proved,* that offense would merge into the charged offense of aggravated murder of which it was an element.[20] Significantly, Justice Rosellini continued:

> As I hope we made clear in [Johnson], the commission of a lesser crime may be only incidental to a greater crime, but that does not make it any the less a crime, which is an aggravating factor in the greater crime. If the greater crime is proven, the lesser crime merges in it, but it does not for that reason lose its efficacy as an element of the greater offense.

Green, 94 Wn.2d at 242 (Rosellini, J., dissenting). In short, Justice Rosellini was simply stating that whether an element (or a crime that constituted an element) was proved was a separate question from any question raised by a merger analysis.

The majority in Green, in citing Johnson and out-of-state kidnapping

---

[20] Merger does not concern the sufficiency of the evidence; instead, where an offense is proved, that offense is thereafter extinguished upon its merger into another offense. See Green I, 91 Wn.2d at 461 (Utter, J., dissenting) (explaining that, where the restraint employed is necessary to complete a different offense, the result should be "a merger which extinguishes any separate kidnapping offense").

merger cases, was puzzling over the application of Johnson, in which more than one offense was charged, to the case before it, in which kidnapping was an element of the only offense charged—in other words, where kidnapping constituted a "crime-within-a-crime." Johnson held that, where the defendant was charged with and convicted of multiple offenses, a conviction for an offense that merged with a separately charged offense would be extinguished. 92 Wn.2d at 681. In Green, however, the defendant was charged with a single offense, aggravated murder in the first degree, and kidnapping was simply an element of that offense. Thus, the court in Green was grappling with the questions: If merger extinguished one of the charged offenses in Johnson, could it also extinguish an element of an offense in the context of a "crime-within-a-crime"? If so, would the kidnapping element "lose its efficacy as an element of the greater offense," a contention rejected by Justice Rosellini in dissent? Green, 94 Wn.2d at 242 (Rosellini, J., dissenting).

Thus, the court in Green, in the passage at issue, was not addressing the quantum of proof of the element of kidnapping; rather, the court was considering the consequences were the element of kidnapping proved.[21] If proved, the question became whether kidnapping was extinguished by merger as an element of the offense of aggravated murder. In contrast, the Fourteenth Amendment due process right concerns only whether the quantum of proof was sufficient

---

[21] The incidental restraint language cited by the court, therefore, did not constitute part of the court's holding. The court had already determined that there was insufficient evidence that kidnapping had occurred. For the merger doctrine to apply, the element of kidnapping would have to have been proved. Accordingly, the incidental restraint language in Green is properly characterized as dictum.

such that a trial court fact finder could rationally determine that the offense was committed beyond a reasonable doubt. As demonstrated by the origin of the incidental restraint language in our Supreme Court's jurisprudence, the court in Green did not purport to create a novel federal due process right applicable only to restraint-based offenses. Thus, both Phuong and the dissent are incorrect that Green holds that the Fourteenth Amendment due process right to be convicted only upon proof beyond a reasonable doubt requires vacation of the conviction of a restraint-based offense where the appellate court determines the restraint employed to be incidental to a separately charged offense.

## B.

### The incidental restraint concern after Green

Just as Green does not purport to create a Fourteenth Amendment due process appellate right to vacation of a conviction where the appellate court determines the restraint employed in committing the offense of kidnapping to be merely incidental to another offense, our Supreme Court's decisional authority following Green does not indicate that such a right exists. Rather, these cases further demonstrate that the incidental restraint language set forth in Green implicates the merger doctrine, not the Fourteenth Amendment due process right to be convicted only upon proof beyond a reasonable doubt. Moreover, the court's most recent case addressing this issue explicitly refuses to recognize the kidnapping merger rule as the law in our state. Its jurisprudence makes clear that our Supreme Court has decided to address the incidental restraint concern by deferring to the legislature in defining criminal offenses—in other words, by

- 27 -

not judicially addressing the concern at all.

Four months after Green was published, Justice Stafford, the author of Green, authored the court's decision in State v. Allen, 94 Wn.2d 860, 621 P.2d 143 (1980). There, the defendant was convicted of both robbery in the first degree and kidnapping in the first degree. Allen, 94 Wn.2d at 861. Allen contended on appeal that the trial court erred by refusing to dismiss the kidnapping charge, "asserting the elements of proof that would support a conviction" of first degree kidnapping "are the same as those which would constitute first degree robbery." Allen, 94 Wn.2d at 862. Employing the language of the incidental restraint concern, Allen urged that, "at best, the kidnapping was only incidental to the robbery and thus the kidnapping charge was duplicitous." Allen, 94 Wn.2d at 862. Allen did not, however, challenge the sufficiency of the evidence to support the kidnapping conviction.

After reviewing our state's kidnapping and robbery statutes, the court concluded that they "require different elements of proof." Allen, 94 Wn.2d at 863. The court then applied those elements to the facts of the case in order to determine whether the kidnapping therein was "incidental to, a part of, or coexistent with the robbery." Allen, 94 Wn.2d at 864. Citing Johnson, the court noted that "[a]ny incidental abduction or restraint" that occurred during the short period of time in which the robbery was committed "would merge into the robbery as a matter of law." Allen, 94 Wn.2d at 864. Significantly—and particularly so given that Justice Stafford authored both Green and Allen—the court immediately thereafter cited Green, indicating that the "incidental restraint" language in both

Johnson and Green implicate the merger doctrine. Allen, 94 Wn.2d at 864.[22]

The court in Allen concluded that the robbery and kidnapping therein were separate events, and, thus, the kidnapping "was neither incidental to nor merged with the robbery." Allen, 94 Wn.2d at 864. Justice Utter, who had strenuously urged the adoption of the kidnapping merger rule in his dissent in Green I, signed the majority opinion in Allen.

Three years later, the court reexamined its approach to the merger doctrine and the offense of kidnapping. In State v. Vladovic, 99 Wn.2d 413, 417, 662 P.2d 853 (1983), the court addressed "whether the doctrine of merger or the constitutional guaranty against double jeopardy prohibits multiple convictions for attempted robbery, robbery and kidnapping." The court described Johnson as the "leading case in this state on the merger doctrine." Vladovic, 99 Wn.2d at 418-19. The court explained that, in Johnson, "[b]ecause proof of the assaults and kidnappings were necessary elements to prove first degree rape, they merged into the rape and were not separably punishable." Vladovic, 99 Wn.2d at 419. The court concluded, however, that Johnson was not determinative of the case before it, as "[p]roof of kidnapping is not necessary to prove the robbery or attempted robbery" of which Vladovic had been convicted. Vladovic, 99 Wn.2d at 420. Thus, the court determined that it could not "conclude that the Legislature intended that the offenses of robbery and attempted robbery merge into a kidnapping conviction." Vladovic, 99 Wn.2d at 420.

---

[22] "'[T]he mere *incidental* restraint and movement of a victim which might occur during the course of a [crime] are not, standing alone, indicia of a true kidnapping.' State v. Green, 94 Wn.2d 216, 227, 616 P.2d 628 (1980)." Allen, 94 Wn.2d at 864 (alterations in original).

The court then recognized that its "only apparent divergence" from that analysis had occurred in Allen. Vladovic, 99 Wn.2d at 420. The court explained its decision in Allen and characterized as dictum its reference therein to merger based upon incidental restraint:

> In Allen we determined that, under the facts of that case, the kidnapping was separate and distinct from the robbery and thus the case fell within an exception to the merger doctrine set forth in [Johnson]. There is dictum in Allen to the effect that had the kidnapping merely been incidental to the robbery, the former offense would have "merge[d] into the robbery as a matter of law."

Vladovic, 99 Wn.2d at 420 (alteration in original) (quoting Allen, 94 Wn.2d at 864). The court then repudiated the approach set forth in Allen, explicitly declaring, that "we do not now adhere to it." Vladovic, 99 Wn.2d at 420. Rather, the court reaffirmed its

> holdings that the merger doctrine is a rule of statutory construction which only applies where the Legislature has clearly indicated that in order to prove a particular degree of crime (e.g., first degree rape) the State must prove not only that a defendant committed that crime (e.g., rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (e.g., assault or kidnapping).

Vladovic, 99 Wn.2d at 420-21. The court concluded that, "[p]ursuant to this rule, kidnapping does not merge into first degree robbery." Vladovic, 99 Wn.2d at 421.

Significantly, the court recognized the incidental restraint concern identified in its earlier decisions: "We note that the definition of 'abduction' in the kidnapping statutes does not require movement or asportation of the victims. One commentator suggests this is a major defect in the statute *and that the*

*Washington Legislature should amend RCW 9A.40.010* to include a movement element." Vladovic, 99 Wn.2d at 418 n.1 (emphasis added). Thus, notwithstanding the court's recognition of this concern, the court made clear that it is the role of the legislature, not of the court, to define the offense of kidnapping. By this reference, our Supreme Court explicitly rejected the approach of other state courts that have addressed the incidental restraint concern either through the application of principles of statutory construction in order to restrict the definition of the offense or through the adoption of the kidnapping merger rule. Rather, the court decided to leave to the legislature any such narrowing of the statutory definition of kidnapping in Washington, thus making clear that *it does not interpret RCW 9A.40.010 to require that the restraint involved in a kidnapping be "not incidental" to a separately charged offense.*

Unsurprisingly, Justice Utter, the court's steadfast proponent of the kidnapping merger rule, dissented from the court's affirmance of the defendant's kidnapping convictions. Vladovic, 99 Wn.2d at 426 (Utter, J., concurring in part, dissenting in part). Recognizing the incidental restraint concern, he warned that "[t]he majority's analysis has the effect of adopting a construction of our kidnapping statute which we have carefully avoided in the past and which produces the absurd result of making every armed robber automatically guilty of first degree kidnapping." Vladovic, 99 Wn.2d at 426 (Utter, J., concurring in part, dissenting in part). Justice Utter then distinguished between that which he understood to be two different types of merger—"general merger" and "kidnapping merger." Vladovic, 99 Wn.2d at 427-28 (Utter, J., concurring in part,

dissenting in part). "General merger," he explained, "is the rule that, absent an express indication of contrary legislative intent, an offense which is an element of and merely incidental to another offense merges and is not separably punishable." Vladovic, 99 Wn.2d at 427 (Utter, J., concurring in part, dissenting in part) (citing Johnson, 92 Wn.2d at 680).[23] He described "kidnapping merger" as "the rule that forced movement of a person cannot support a conviction for kidnapping if it is merely incidental to some other offense." Vladovic, 99 Wn.2d at 428 (Utter, J., concurring in part, dissenting in part).

Justice Utter denounced the majority's assertion that the court had not previously applied the kidnapping merger rule: "Our prior cases have not, as the majority apparently contends, adopted solely the general merger rule and rejected the kidnapping merger rule. In fact, we have expressly enunciated both rules and have rejected neither." Vladovic, 99 Wn.2d at 432 (Utter, J., concurring in part, dissenting in part). In Johnson, he explained, the court applied the general merger rule, merging the offense of kidnapping into the offense of first degree rape because it was an element of that offense. Vladovic, 99 Wn.2d at 432 (Utter, J., concurring in part, dissenting in part). He continued: "At the same time, however, we recognized the historical abuse of kidnapping statutes and cited with approval Daniels, Adams I, and Levy, all of which applied the kidnapping merger rule. Thus, we gave at least tacit recognition to both merger

[23] Six years later, authoring the lead opinion in State v. Collicott, 112 Wn.2d 399, 410, 771 P.2d 1137 (1989), Justice Utter explained the state of the general merger doctrine in Washington as he understood it to be at the time: "Merger is appropriate where all of the criminal behavior at issue can be defined under one greater offense, even though elements of this greater offense are offenses in themselves."

rules in [Johnson]." Vladovic, 99 Wn.2d at 432 (Utter, J., concurring in part, dissenting in part) (citation omitted).

"In two later cases," Justice Utter explained, "we expressly recognized the kidnapping merger rule." Vladovic, 99 Wn.2d at 432 (Utter, J., concurring in part, dissenting in part). The first such case, he explained, was Green. Vladovic, 99 Wn.2d at 432 (Utter, J., concurring in part, dissenting in part). Justice Utter recognized that the court in Green had concluded "that there was insufficient evidence to support a finding of kidnapping." Vladovic, 99 Wn.2d at 433 (Utter, J., concurring in part, dissenting in part). However, according to Justice Utter, the court's decision in Green was not "based solely on the lack of any restraint but was also based on the fact that what restraint and movement had taken place was incidental to the murder." Vladovic, 99 Wn.2d at 433 (Utter, J., concurring in part, dissenting in part). He explained that the court had cited Adams, 389 Mich. 222, and Levy, 15 N.Y.2d 159, "for the view that 'a technical kidnapping [merges] when that kidnapping is merely incidental to the commission of another crime.'" Vladovic, 99 Wn.2d at 433 (Utter, J., concurring in part, dissenting in part) (alteration in original) (internal quotation marks omitted) (quoting Green, 94 Wn.2d at 227). Justice Utter concluded: *"This explicit statement and application of the kidnapping merger rule* is completely ignored by the majority." Vladovic, 99 Wn.2d at 433 (Utter, J., concurring in part, dissenting in part) (emphasis added). Although Justice Utter was writing in dissent in Vladovic, his explanation of the court's previous cases clearly indicates that the incidental restraint language used in Green implicates the kidnapping merger rule, not Fourteenth

- 33 -

Amendment due process proof beyond a reasonable doubt. Justice Utter continued his discussion by noting that, "[w]e also expressly recognized the kidnapping merger rule in State v. Allen, 94 Wn.2d 860, 621 P.2d 143 (1980)," Vladovic, 99 Wn.2d at 433 (Utter, J., concurring in part, dissenting in part), thus reinforcing that the incidental restraint language used in Green applied to the doctrine addressed in Allen—the kidnapping merger rule.

The court in Vladovic did not, however, solely address the doctrine of merger. Rather, Vladovic also raised a challenge to the sufficiency of the evidence to support his kidnapping conviction. Vladovic, 99 Wn.2d at 424. Vladovic relied on Green in asserting "that his kidnapping convictions cannot stand because the acts did not bear the indicia of a true kidnapping." Vladovic, 99 Wn.2d at 424. In other words, his assertion was based upon the incidental restraint language in Green, which, as we have shown, does not implicate sufficiency of the evidence. The court apparently agreed, disregarding the defendant's assertion and, instead, noting that the court in Green had held that "an ultimate killing of a victim does not itself constitute the restraint necessary to prove kidnapping." Vladovic, 99 Wn.2d at 424. Thus, the court concluded: "Green is inapposite in the instant case since . . . the restraint of the four employees was a separate act from the robbery of [another victim]. Therefore, the robbery of [that victim] could not supply the restraint element of the kidnappings." Vladovic, 99 Wn.2d at 424. The court determined that the defendant's challenge to the sufficiency of the evidence was without merit. Vladovic, 99 Wn.2d at 424.

Thus, both the majority opinion and Justice Utter's dissenting opinion in Vladovic demonstrate that our Supreme Court does not consider the incidental restraint concern to implicate the Fourteenth Amendment's due process guarantee of proof beyond a reasonable doubt. Instead, as Justice Utter explained, Green and Allen "expressly recognized the kidnapping merger rule." Vladovic, 99 Wn.2d at 433 (Utter, J., dissenting in part, concurring in part). The majority, however, declined to apply the kidnapping merger rule in Vladovic, instead categorizing as "dictum" the kidnapping merger language employed in Allen and clarifying that it no longer "adhere[s] to" that portion of the Allen decision. Vladovic, 99 Wn.2d at 420. Instead, the court held that "the merger doctrine is a rule of statutory construction" that applies only where, as in Johnson, in order to prove a particular degree of an offense, the State must prove not only that the defendant committed that offense, but also that he or she committed a separate offense defined elsewhere in the criminal statutes. Vladovic, 99 Wn.2d at 420-21. Moreover, although the defendant in Vladovic cited the incidental restraint language in Green in support of his sufficiency of the evidence challenge, the court declined to evaluate the sufficiency of the evidence based upon the "incidental" nature of the restraint. No case could more clearly demonstrate that our Supreme Court does not consider the incidental restraint concern to implicate the Fourteenth Amendment's due process guarantee of proof beyond a reasonable doubt.

The court's subsequent cases continue to support this conclusion. In In re Pers. Restraint of Fletcher, 113 Wn.2d 42, 52, 776 P.2d 114 (1989), the court

rejected an assertion that a kidnapping conviction merged into a robbery conviction. Citing Johnson and Vladovic, and adhering to its earlier pronouncement of the general merger rule, the court concluded that because "[p]roof of kidnapping is not necessary to prove robbery," "the kidnapping conviction did not merge into the robbery conviction." Fletcher, 113 Wn.2d at 51-52. Justice Utter again dissented, once more urging the application of the kidnapping merger rule, which he understood to be "an additional reason compel[ling the court] to recognize merger" in that case. Fletcher, 113 Wn.2d at 57-58 (Utter, J., dissenting).[24] Thus, the incidental restraint concern was again characterized as an issue of merger, and—as Justice Utter lamented—the court again rejected the kidnapping merger rule as the solution to the incidental restraint concern.

Fifteen years after its decision in Green, our Supreme Court was again called upon to determine whether there was sufficient evidence of a kidnapping to support a defendant's aggravated murder in the first degree conviction. State v. Brett, 126 Wn.2d 136, 892 P.2d 29 (1995). In Brett, the defendant asserted that "there was no 'abduction' because the restraint was incidental to the murder,

---

[24] Justice Utter explained
the doctrine of kidnapping merger. Under this doctrine, the forced movement or abduction of a person incidental to another offense cannot support a conviction for kidnapping. See Vladovic, 99 Wn.2d at 428 (Utter, J., concurring in part, dissenting in part). The kidnapping merger rule is followed in the majority of jurisdictions in this country. See Vladovic, at 428 (Utter, J., concurring in part, dissenting in part); see also Government of V.I. v. Berry, 604 F.2d 221, 225 (3d Cir. 1979). My position on advocating the kidnapping merger rule remains unchanged.
Fletcher, 113 Wn.2d at 58 (Utter, J., dissenting). It is apparent that Justice Utter found himself "advocating the kidnapping merger rule" because it was not, then, a component of the law in Washington.

and the kidnapping merged into the robbery." 126 Wn.2d at 166.[25] Justice

Dolliver's lead opinion noted:

> This court has held and the State concedes that the mere incidental restraint and movement of the victim during the course of another crime which has no independent purpose or injury is insufficient to establish a kidnapping. See Green, 94 Wn.2d at 227 (kidnapping merges into first degree rape); State v. Johnson, 92 Wn.2d 671, 680, 600 P.2d 1249 (1979) (kidnapping merges into first degree rape), cert. dismissed, 446 U.S. 948[, 100 S. Ct. 2179, 64 L. Ed. 2d 819] (1980). See also State v. Allen, 94 Wn.2d 860, 862-64, 621 P.2d 143 (1980).

Brett, 126 Wn.2d at 166.

Contrary to Phuong's present contention, however, the court's statement

in Brett does not indicate that the "incidental" nature of the restraint supporting a

kidnapping conviction implicates Fourteenth Amendment due process proof

beyond a reasonable doubt. Rather, the court cited its holdings in Green and

Johnson as compelled by the merger doctrine. Brett, 126 Wn.2d at 166 (citing

both the holding of Green and the holding of Johnson as "kidnapping merges into

first degree rape").[26] Thus, once again, the court explicitly recognized that the

incidental restraint concern implicates the merger doctrine, not Fourteenth

Amendment due process. Moreover, the court thereafter determined that

sufficient evidence supported the kidnapping element without reference to the

purportedly "incidental" nature of the restraint. Brett, 126 Wn.2d at 167.[27] To be

---

[25] This was the first mention of the incidental restraint concern in an aggravated murder "crime-within-a-crime" prosecution since Green.

[26] The third case cited, Allen, was, of course, also a merger case.

[27] The court's brief mention of the merger doctrine in the course of discussing evidentiary sufficiency was—as with Green—a product of its concern as to whether, when a "crime-within-a-crime" is charged, elements of that crime can merge into other elements, thus "extinguishing" the

- 37 -

sure, the court in <u>Brett</u> did not conclude that a defendant's Fourteenth Amendment due process right to be convicted only upon proof beyond a reasonable doubt is implicated where the restraint supporting a kidnapping conviction is "incidental" to another offense.[28]

Lest any doubt should still persist regarding our Supreme Court's rejection of the kidnapping merger rule, the court made clear in <u>State v. Louis</u>, 155 Wn.2d 563, 120 P.3d 936 (2005), that the "incidental" nature of the restraint supporting a kidnapping conviction does not compel the merger of that offense into a separately charged offense. There, the defendant was convicted of two counts of robbery in the first degree and two counts of kidnapping in the first degree. <u>Louis</u>, 155 Wn.2d at 567. Louis contended on appeal that, because "a kidnapping will always be simultaneous and incidental to armed robbery," the kidnapping charges should merge into the robbery charges. <u>Louis</u>, 155 Wn.2d at 570. The court further characterized the defendant's position: "Although he acknowledges that this court has rejected an identical argument in <u>Vladovic</u>, he urges us to overrule that decision and adopt the 'kidnapping merger' rule." <u>Louis</u>, 155 Wn.2d at 570.

The court, however, firmly rejected the defendant's plea that it adopt the kidnapping merger rule, stating: "We see no reason to depart from our decisions

---

merged element. Beyond its passing reference to the issue, however, the court did not seek to further address the issue.

[28] It also bears mention that this entire discussion took place in a part of the lead opinion in which Justice Dolliver was speaking solely for himself. While a majority of the court's justices, in separate opinions, joined in his conclusion that the evidence was sufficient, none adopted his musings on the possible applicability of <u>Green</u> and <u>Johnson</u>.

in <u>Vladovic</u> and <u>Fletcher</u>." <u>Louis</u>, 155 Wn.2d at 571. Again demonstrating deference to the legislature in defining criminal offenses, the court concluded "that the legislature has not indicated that a defendant must commit kidnapping before he or she can be found guilty of first degree robbery or commit armed robbery before he or she can be convicted of first degree kidnapping." <u>Louis</u>, 155 Wn.2d at 571. Accordingly, the court held: "[W]e adhere to our decisions in <u>Vladovic</u> and <u>Fletcher</u> and hold that Louis may be punished separately for robbery and kidnapping." <u>Louis</u>, 155 Wn.2d at 571. Although Justice Madsen dissented with regard to a separate issue raised in that case, the court was unanimous with regard to its kidnapping merger decision and its continued adherence to a *laissez faire* approach to the incidental restraint concern.

In conclusion, our Supreme Court, as demonstrated by a review of its decisional authority, has never decided a Fourteenth Amendment due process proof beyond a reasonable doubt case based upon the incidental restraint concern. Instead, the court has repeatedly characterized this concern as one implicating the merger doctrine. Indeed, the court has characterized the incidental restraint language in <u>Green</u>—the language relied upon by Phuong and the dissent in asserting that insufficient evidence supports a restraint-based offense conviction where the restraint was "incidental"—as a merger analysis. Moreover, since 1983, the court has repeatedly rejected the notion that the kidnapping merger rule is the law in our state. Thus, there are two conclusions to be drawn from the court's decisional authority on this issue. First, a defendant's conviction of a restraint-based offense is not subject to reversal on Fourteenth

Amendment due process grounds based upon a claim that the restraint involved in the offense was "incidental" to another charged offense. And, second, because our state law does not encompass the kidnapping merger rule, the defendant may lawfully be punished for both offenses.

## C.

### Fourteenth Amendment due process and the *Jackson* standard

Having demonstrated that our Supreme Court has never decided a Fourteenth Amendment due process proof beyond a reasonable doubt case based upon the incidental restraint concern, we now address the parameters of the Jackson standard to explain why, absent a legislative or judicial narrowing of the definition of "restrain," the Fourteenth Amendment is not implicated by the incidental restraint concern.

The Fourteenth Amendment due process clause protects the accused in a criminal case "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Winship, 397 U.S. at 364. In Jackson, the Court addressed the implication of the trial right recognized in Winship on review of a conviction, considering whether, pursuant to Winship, "a federal habeas corpus court must consider not whether there was *any* evidence to support a state-court conviction, but whether there was sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt." 443 U.S. at 312-13. The Court concluded:

> After Winship the critical inquiry on review of the sufficiency
> of the evidence to support a criminal conviction must be not simply
> to determine whether the jury was properly instructed, but to

- 40 -

> determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Jackson, 443 U.S. at 318-19 (footnote omitted).

In Green, our Supreme Court for the first time applied the Jackson standard in determining whether sufficient evidence supported the defendant's conviction. 94 Wn.2d at 220-21. Indeed, it is because of Jackson that the court revisited its conclusion in Green I that "substantial evidence" supported the conviction. Green, 94 Wn.2d at 220-21. In addition, as explained above, it is the court's language in Green regarding the incidental nature of the restraint therein upon which Phuong relies in asserting that his unlawful imprisonment conviction is not supported by sufficient evidence. In essence, Phuong asserts that there exists an appellate right to reversal of a conviction of a restraint-based offense where the evidence demonstrates that the restraint employed was "merely incidental" to a separately charged offense.

However, there is no indication in Jackson that the Supreme Court created such an appellate court right.[29] Rather, the Court made quite clear that the constitutional standard pronounced therein does not impinge upon the authority

---

[29] Indeed, the creation of such a right would be contrary to the Court's determination that the federal constitution provides no right to appeal from criminal verdicts based upon alleged trial court errors. Goeke v. Branch, 514 U.S. 115, 120, 115 S. Ct. 1275, 131 L. Ed. 2d 152 (1995) ("[D]ue process does not require a State to provide appellate process at all."); Evitts v. Lucey, 469 U.S. 387, 393, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985) ("Almost a century ago, the Court held that the Constitution does not require States to grant appeals as of right to criminal defendants seeking to review alleged trial court errors." (citing McKane v. Durston, 153 U.S. 684, 14 S. Ct. 913, 38 L. Ed. 867 (1894))).

of state legislatures to define crimes. Refuting precisely that contention, the Court explained: "The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S at 324 n.16. To put it plainly, nothing about the Fourteenth Amendment due process right to proof beyond a reasonable doubt would allow for that right to require a state court to modify its legislature's definition of the meaning of "restraint."

Moreover, the Court in Jackson explained that the "inquiry on review of the sufficiency of the evidence to support a criminal conviction" does not permit the court to supplant the role of the fact finder to weigh the evidence and determine guilt. 443 U.S. at 318. The Court explained:

> [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

Jackson, 443 U.S. at 318-19 (footnote and internal citations omitted). The

Jackson standard is simply intended to ensure that the defendant's due process right in the trial court was properly observed; it is concerned with the quantum of proof supporting a conviction, not with what acts must be proved.

"Authority to define crimes and set punishments rests firmly with the legislature." State v. Torres Ramos, 149 Wn. App. 266, 271, 202 P.3d 383 (2009). Our legislature has determined that "[a] person is guilty of unlawful imprisonment if he or she knowingly restrains another person." RCW 9A.40.040. Our legislature has defined "restrain" as "to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty." RCW 9A.40.010(6). Our Supreme Court has repeatedly identified the incidental restraint concern resulting from this broad definition of "restrain." Indeed, the court has impliedly encouraged the legislature to address this concern. Vladovic, 99 Wn.2d at 418 n.1 ("We note that the definition of 'abduction' in the kidnapping statutes does not require movement or asportation of the victims. One commentator suggests this is a major defect in the statute and that the Washington Legislature should amend RCW 9A.40.010 to include a movement element."). Nevertheless, our legislature has not done so.[30]

Here, the jury was instructed consistent with the statutory definition of unlawful imprisonment. Because our legislature has not required as an element of the offense that the restraint employed be "not incidental" to another offense,

---

[30] Other state courts have addressed the incidental restraint concern by restricting the definition of the offense of kidnapping based upon principles of statutory construction. As is clearly demonstrated above, our Supreme Court has not done so.

the jury was not asked whether the restraint involved in the unlawful imprisonment offense was incidental to the attempted rape offense. Thus, the jury did not consider the alleged incidental nature of the restraint. Nevertheless, on appeal, Phuong requests that we reverse his unlawful imprisonment conviction because, he asserts, the restraint employed in carrying out that offense was incidental to his attempted rape of Liem. Were we to so hold, we would be intruding upon not only our legislature's authority to define criminal offenses, but also upon the jury's role to weigh the evidence and determine guilt.[31] Such a holding would be inconsistent with Fourteenth Amendment due process jurisprudence and our Supreme Court's approach to the incidental restraint concern.

The Fourteenth Amendment due process clause protects an accused against conviction of a criminal offense except upon proof beyond a reasonable doubt of each of the elements of that offense. Neither our legislature nor our Supreme Court has determined that the requirement that restraint be "not incidental" to another offense constitutes an element of restraint-based crimes. Thus, in order to obtain such a conviction, the State need not prove that the restraint employed was "not incidental" to a separately charged offense. Accordingly, where the defendant challenges the sufficiency of the evidence to support such a conviction, we do not properly consider whether the restraint employed was "not incidental" to a separately charged offense.

---

[31] Appellate courts defer to the trier of fact "to resolve conflicts in testimony, weigh evidence and draw reasonable inferences therefrom." State v. Gerber, 28 Wn. App. 214, 216, 622 P.2d 888 (1981).

Moreover, our Supreme Court has never decided a Fourteenth Amendment due process proof beyond a reasonable doubt case based upon the alleged incidental nature of the restraint employed in committing the offense. Quite to the contrary, in addressing the incidental restraint concern, the court has explicitly recognized the authority of the legislature to define restraint-based criminal offenses. Vladovic, 99 Wn.2d at 418 n.1. We reject Phuong's request to reverse his unlawful imprisonment conviction based on his claim that the restraint employed in committing that offense was "merely incidental" to his commission of attempted rape in the second degree.

### D.

### The Court of Appeals misapplies the *Green* decision

Although we conclude that the allegedly incidental nature of the restraint employed in committing a restraint-based offense is not an issue of due process, we note that Phuong is correct that several decisions from Division Two of this court have applied the incidental restraint concept in determining the sufficiency of the evidence to support such a conviction. Elmore, 154 Wn. App. 885; Bybee, 142 Wn. App. 260; Saunders, 120 Wn. App. 800; Korum, 120 Wn. App. 686; State v. Harris, 36 Wn. App. 746, 677 P.2d 202 (1984).[32] Each of these cases is based upon the following premise:

---

[32] We note that Division Two decisions have been inconsistent regarding the analytical foundation for holdings based upon the incidental restraint concern. Most recently, that division of this court appears to have adopted a version of the kidnapping merger rule. State v. Lindsay, 171 Wn. App. 808, 288 P.3d 641, 658-59 (2012) (relying on Korum and Green in concluding that the restraint employed, charged as second degree kidnapping, "was incidental to the crime of first degree robbery and these convictions merge").

> Although Green borrowed the "incidental restraint" concept from an earlier merger case, it incorporated this concept into a new standard for determining sufficiency of evidence on appeal. Thus, as we applied Green in Korum, when the only evidence presented to the jury demonstrates that the restraint is merely incidental to completing another crime, the jury has not received sufficient evidence to convict the defendant of a separately charged kidnapping.

Bybee, 142 Wn. App. at 266-67 (footnotes omitted).

However, "Green did no such thing." State v. Grant, No. 65172-2-I, 2012 WL 7548988, at *4 (Wash. Ct. App. Dec. 24, 2012) (rejecting the assertion that "Green introduced a new test, under which due process is not satisfied unless the kidnapping is shown to be not incidental to the robbery"). Thus, beginning from a false premise—that Green created a novel due process standard for determining the sufficiency of the evidence on appeal—these Division Two opinions arrive at a false conclusion—that the restraint supporting a restraint-based offense conviction must be "not incidental" to a separately charged offense.[33]

Rather, in Green, the court, in the context of applying the Jackson standard for the first time, was considering how its recent merger decision in Johnson, in which more than one offense was charged, might apply in Green, in which the only offense charged was aggravated murder. As explained above, the court had already concluded that there was insufficient evidence of restraint by means of secreting the victim to support the kidnapping element of

---

[33] Green was the first Washington case to apply the existing federal due process standard for determining the sufficiency of the evidence—the Jackson standard. The standard described in Bybee is not the Jackson standard.

aggravated murder. Green, 94 Wn.2d at 226. The court then cited Johnson, a merger case, in explaining that "the mere *incidental* restraint and movement of a victim which might occur during the course of a homicide are not, standing alone, indicia of true kidnapping." Green, 94 Wn.2d at 227. As is made clear by Justice Rosellini's dissent, the court was grappling with the application of the merger doctrine set forth in Johnson to a case in which only one offense was charged, and, in effect, the kidnapping constituted a "crime-within-a-crime." See Green, 94 Wn.2d at 242 (Rosellini, J., dissenting). As Justice Utter described kidnapping merger in Green I, where the offense of kidnapping merges into a separately charged offense, the result is that the merger "extinguishes" the kidnapping offense. Green I, 91 Wn.2d at 461 (Utter, J., dissenting). Thus, in Green, the court was considering, following its decision in Johnson, whether the element of kidnapping, the establishment of which was necessary to support an aggravated murder conviction, would be extinguished. Justice Rosellini, as is clear from his dissent, believed not. See Green, 94 Wn.2d at 242 (Rosellini, J., dissenting).

The language in Green relied upon in the Division Two opinions cited above did not create a new due process standard applicable only to restraint-based offenses. Nor could Green have created such a standard. The court granted reconsideration of its decision in Green I for the purpose of applying the new federal due process standard for sufficiency of the evidence review pronounced in Jackson. Green, 94 Wn.2d at 220-21. Thus, the court was duty-

bound to follow <u>Jackson</u> with regard to this federal constitutional question.[34] <u>Jackson</u>, as we have explained, explicitly rejected the notion that the constitutional standard set forth therein would "invite intrusions" upon the power of state legislatures to define criminal offenses. 443 U.S. at 324 n.16. To the contrary, the United States Supreme Court held that "the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." <u>Jackson</u>, 443 U.S. at 324 n.16. Thus, in applying <u>Jackson</u> to address the federal due process question of sufficiency of the evidence, the Washington Supreme Court could not have usurped the legislature's recognized primacy in defining criminal offenses and imposed a judicially-invented additional element of restraint-based offenses, namely, that the restraint employed be "not incidental" to another offense.

Finally, we recognize that decisions from Division One and Division Three of this court have previously rejected the contention that insufficient evidence supports conviction of a restraint-based offense where the restraint employed is "not incidental" to a separately charged offense. Division One has never held that the evidence supporting such a conviction was insufficient based upon the allegedly incidental nature of the restraint employed. <u>See</u> <u>Grant</u>, 2012 WL 7548988 (rejecting the contention that <u>Green</u> implicates the federal due process right to be convicted only upon proof beyond a reasonable doubt); <u>State v.</u>

---

[34] The court discharged its duty. As noted in an opinion filed eight weeks after <u>Green</u>: "We have recently applied the <u>Jackson</u> test in analyzing the sufficiency of the evidence in a criminal case. <u>State v. Green</u>, 94 Wn.2d 216, 616 P.2d 628 (1980)." <u>State v. Delmarter</u>, 94 Wn.2d 634, 637-38, 618 P.2d 99 (1980).

Washington, 135 Wn. App. 42, 143 P.3d 606 (2006) (distinguishing the facts therein from those in Green and declining to address the "incidental restraint" concept);[35] State v. Collins, 45 Wn. App. 541, 726 P.2d 491 (1986) (distinguishing Green and declining to address the "incidental restraint" concept); State v. Whitney, 44 Wn. App. 17, 720 P.2d 853 (1986) (holding that kidnapping element did not merge into rape where the defendant was charged only with rape), aff'd, 108 Wn.2d 506, 739 P.2d 1150 (1987).[36] Indeed, as explained above, we have explicitly rejected the contention that the incidental nature of the restraint supporting a restraint-based offense is a matter of due process. Grant, 2012 WL 7548988, at *1-2. Similarly, Division Three, in its only opinion addressing the incidental restraint concern, recently rejected a defendant's contention that the kidnapping he committed was incidental to a robbery and, thus, that there was insufficient evidence to support the kidnapping conviction. State v. Butler, 165 Wn. App. 820, 828-29, 269 P.3d 315 (2012). Division Three determined that Vladovic was the controlling Supreme Court authority on the question and, thus, that the case should be resolved based upon merger principles. Butler, 165 Wn. App. at 831. Hence, as with Division One, Division

---

[35] Washington was a per curiam decision rendered without oral argument. Citing only Green, the defendant therein asserted that insufficient evidence supported his conviction of unlawful imprisonment because any restraint proved was incidental to his commission of continuing assaults. Washington, 135 Wn. App. at 50. We dismissed the defendant's claim without evaluating its basis, holding that "[t]he evidence thus supports the conclusion that the restraint was not merely incidental to the assaults." Washington, 135 Wn. App. at 51.

[36] In Whitney, the defendant contended both that the evidence was insufficient to support the kidnapping element of rape in the first degree and that the trial court erred by not instructing the jury that unanimity was required on at least one of the two alternate means of committing rape in the first degree. 44 Wn. App. at 18. Our Supreme Court reviewed only the issue of jury unanimity, affirming our decision that "jury unanimity is not necessary if each charged alternative is supported by substantial evidence." Whitney, 108 Wn.2d at 507.

Three has declined to recognize the incidental restraint concern as implicating

the Fourteenth Amendment due process guarantee of proof beyond a reasonable

doubt.

As we did in Grant, we again reject the contention that the allegedly

incidental nature of the restraint supporting a restraint-based offense implicates

the federal due process guarantee.[37] Accordingly, we decline to reverse

Phuong's unlawful imprisonment conviction on the basis that the restraint

---

[37] The dissenting judge herein also dissented from this court's opinion in Grant, 2012 WL 7548988 (Becker, J., dissenting). In that dissent, it was suggested that the jury should have been instructed regarding the factors set forth in Berry, 604 F.2d at 227, as advocated by Justice Utter in dissent in Vladovic. Grant, 2012 WL 7548988, at *9 (Becker, J., dissenting) (quoting Vladovic, 99 Wn.2d at 437 (Utter, J., concurring in part, dissenting in part) (proposing that the jury should be instructed regarding whether the restraint employed was incidental to another offense and suggesting that "incidental" be defined in terms of the test and factors enunciated in Berry)).

> Those factors are: (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.

Berry, 604 F.2d at 227. For several reasons, this proposed resolution is untenable.

Procedurally, neither in Grant nor here is the claim raised that the jury instructions given were legally erroneous. Instead, Phuong asserts that he is entitled to vacation of his conviction of unlawful imprisonment and dismissal of the charge with prejudice. Moreover, where the purported instructional error is definitional, as urged in the Grant dissent, such error cannot be raised on appeal unless it was raised in the trial court. State v. Gordon, 172 Wn.2d 671, 679-80, 260 P.3d 884 (2011) ("Further elaboration in the instructions would have been in the vein of definitional terms, and the omission of such definitions is not an error of constitutional magnitude satisfying the RAP 2.5(a) standard.").

Most significant, however, is the fact that the resolution urged by the dissent in Grant is analytically flawed. Indeed, the suggested resolution is foreclosed by our Supreme Court's refusal in Vladovic to amend the statutory definition of kidnapping by judicially imposing additional elements of the offense. See 99 Wn.2d at 418 n.1 ("We note that the definition of 'abduction' in the kidnapping statutes does not require movement or asportation of the victims. One commentator suggests this is a major defect in the statute and that the Washington Legislature should amend RCW 9A.40.010 to include a movement element."). Moreover, our Supreme Court declined to do so in the very same opinion in which Justice Utter, in dissent, advocated for instructing the jury regarding the Berry factors. Thus, the court refused to judicially amend the kidnapping statute in the same opinion in which Justice Utter suggested that they do just that. Nevertheless, the dissent in Grant attempts to import these factors as additional elements of restraint-based offenses, against both the will of our Supreme Court and—given that our legislature has not amended the statute to reference such factors in the 30 years since Vladovic was filed—the apparent will of our legislature.

employed was, as Phuong asserts, incidental to the commission of the attempted rape. As required by Jackson, Phuong's Fourteenth Amendment due process right to be convicted only upon proof beyond a reasonable doubt was properly observed in the trial court. Accordingly, we affirm his unlawful imprisonment conviction.

IV

Phuong additionally contends that the information charging him with unlawful imprisonment was deficient because it did not include the statutory definition of "restrain." Our Supreme Court, however, recently rejected a defendant's contention that the definition of an element of an offense was an essential element that must be alleged in the charging document. State v. Allen, ___Wn.2d ___, 294 P.3d 679 (2013). Following the court's analysis in that case, we similarly reject Phuong's contention herein.

"All essential elements of a crime, statutory or otherwise, must be included in a charging document in order to afford notice to an accused of the nature and cause of the accusation against him." State v. Kjorsvik, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). Where the constitutional sufficiency of an information is challenged for the first time on appeal, the information is construed "'quite liberally.'" State v. Moavenzadeh, 135 Wn.2d 359, 362, 956 P.2d 1097 (1998) (quoting State v. Hopper, 118 Wn.2d 151, 156, 822 P.2d 775 (1992)). In assessing the sufficiency of an information, we first determine whether the essential elements of the offense "appear[] in any form, or by fair construction can be found" in the information. Kjorsvik, 117 Wn.2d at 108. Where all of the

essential elements are contained in the charging document, we then "ask whether the defendant has shown that he was nonetheless prejudiced by any vague or inartful language in the charge." Kjorsvik, 117 Wn.2d at 111.

Here, Phuong contends that the information charging him with unlawful imprisonment was constitutionally deficient because it did not include the statutory definition of "restrain," which, he asserts, is an essential element of the offense. By statute, "[a] person is guilty of unlawful imprisonment if he or she knowingly restrains another person." RCW 9A.40.040. In a separate definitions section of the statute, our legislature defines "restrain" as follows: "'Restrain' means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty." RCW 9A.40.010(6).

Employing the statutory language of the offense, the State charged Phuong with unlawful imprisonment, alleging that Phuong "did knowingly restrain Samouen Liem a human being . . . [c]ontrary to RCW 9A.40.040." Phuong asserts, however, that, to be constitutionally sufficient, the information was required to also include the components of the definition of "restrain"—that he (1) restricted a person's movements, (2) without that person's consent, (3) without legal authority, and (4) in a manner that substantially interfered with the person's liberty. The components of the definition constitute essential elements of the offense, according to Phuong, because the State must prove them in order to obtain a conviction.

Since oral argument in this case, our Supreme Court has addressed a

- 52 -

similar argument regarding the sufficiency of an information. Allen, 294 P.3d 679. There, the defendant was charged with felony harassment.[38] Allen, 294 P.3d at 681. Consistent with First Amendment protections, courts interpret statutes that criminalize threatening language, such as the harassment statute, "as proscribing only unprotected true threats." Allen, 294 P.3d at 687. Thus, only true threats are criminalized by the harassment statute, and the State must prove that the threat constituted a "true threat" in order to obtain a conviction.[39] Accordingly, the defendant in Allen contended that, "because only true threats may be prosecuted, the true threat requirement is an essential element of a harassment statute." 294 P.3d at 687.

Our Supreme Court rejected this contention. Allen, 294 P.3d at 688. In so doing, the court cited approvingly opinions from this court in which we concluded that "the true threat requirement is not an essential element of harassment statutes." Allen, 294 P.3d at 689 (citing State v. Tellez, 141 Wn. App. 479, 170 P.3d 75 (2007); State v. Atkins, 156 Wn. App. 799, 236 P.3d 897 (2010)). In Tellez, the court noted, we held that "'the constitutional concept of "true threat" merely defines and limits the scope of the essential threat element in the felony telephone harassment statute and is not itself an essential element of the crime.'"

---

[38] As relevant in Allen, "[a] person is guilty of harassment if . . . [w]ithout lawful authority, the person knowingly threatens . . . [t]o cause bodily injury immediately or in the future to the person threatened or to any other person." RCW 9A.46.020(1)(a)(i). RCW 9A.46.020(2)(b) describes the situations in which harassment constitutes a felony.

[39] "A true threat is 'a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life of another person.'" Allen, 294 P.3d at 687 (alteration in original) (internal quotation marks omitted) (quoting State v. Kilburn, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004)).

Allen, 294 P.3d at 689 (quoting Tellez, 141 Wn. App. at 484). In Atkins, the court recognized, we determined Tellez to be dispositive and held that "so long as the jury was instructed as to the true threat requirement, the defendant's First Amendment rights were protected." Allen, 294 P.3d at 689. In Allen, as in Atkins, the jury was given an instruction defining true threat. 294 P.3d at 689. The court concluded that "failure to include the true threat requirement in the information and to-convict instruction was not error." Allen, 294 P.3d at 689.[40] Thus, although the constitution requires that a threat be a "true threat" in order to convict a defendant of harassment, the true threat concept defines an essential element of the offense—"threat"—rather than itself constituting such an element.

Similarly, here, Phuong contends that the statutory definition of "restrain" is an essential element that must be alleged in the information because the State must prove the components of this statutory definition in order to obtain an unlawful imprisonment conviction. Just as the defendant in Allen asserted that the definition of "true threat" modified the threat element of harassment, Phuong asserts that the statutory definition of "restrain" modifies the restraint element of unlawful imprisonment.[41] Here, however, it is a statutory definition—not a constitutional imperative—that is asserted to be required in the charging document. Following our Supreme Court's analysis in Allen, Phuong's

---

[40] Our citations to Allen are to a 4-justice lead opinion. The three separate opinions filed in Allen, two in concurrence and one in dissent, dealt with issues other than the sufficiency of the information. Just as all 9 justices treated the lead opinion as dispositive on this question, so do we.

[41] We note that, here, the jury was instructed as to the definition of "restrain."

contention fails.[42]

V

Finally, Phuong contends that he received ineffective assistance of counsel because his trial counsel did not argue at sentencing that the attempted rape and unlawful imprisonment convictions constituted the same criminal conduct for purposes of calculating his offender score. It is likely that, had Phuong's counsel raised this argument, the sentencing court would have determined that the offenses constituted the same criminal conduct, thus lowering Phuong's offender score. Accordingly, we remand for a new sentencing hearing in which Phuong's counsel can so argue.

The sentencing court calculates an offender score for purposes of sentencing by adding current offenses and prior convictions. RCW 9.94A.589(1)(a). The offender score for each current offense includes all other current offenses unless the trial court finds "that some or all of the current offenses encompass the same criminal conduct." RCW 9.94A.589(1)(a). Where the court makes such a finding, those current offenses are counted as one crime for sentencing purposes. RCW 9.94A.589(1)(a). Offenses constitute the same criminal conduct if they are (1) committed with the same criminal intent, (2) committed at the same time and place, and (3) involve the same victim. RCW 9.94A.589(1)(a); State v. Vike, 125 Wn.2d 407, 410, 885 P.2d 824 (1994).

---

[42] Although not cited to us by either party, we are aware that a decision of this court addressing this issue reaches the opposite conclusion to that reached herein. State v. Johnson, ___ Wn. App. ___, 289 P.3d 662 (2012). That case, however, was decided without the benefit of our Supreme Court's recent decision in Allen. Because Allen is dispositive, we follow that Supreme Court precedent. State v. Gore, 101 Wn.2d 481, 487, 681 P.2d 227 (1984).

"Intent, in this context, is not the particular *mens rea* element of the particular crime, but rather is the offender's objective criminal purpose in committing the crime." State v. Adame, 56 Wn. App. 803, 811, 785 P.2d 1144 (1990). In determining whether multiple crimes constitute the same criminal conduct, courts consider "how intimately related the crimes are," "whether, between the crimes charged, there was any substantial change in the nature of the criminal objective," and "whether one crime furthered the other." State v. Burns, 114 Wn.2d 314, 318, 788 P.2d 531 (1990).

Because Phuong's counsel did not argue at sentencing that the offenses constituted the same criminal conduct, that argument is waived on appeal. State v. Brown, 159 Wn. App. 1, 16-17, 248 P.3d 518 (2010), rev. denied, 171 Wn.2d 1015 (2011). Nevertheless, because the claim of error is of constitutional magnitude, Phuong may claim ineffective assistance of counsel for the first time on appeal. State v. Greiff, 141 Wn.2d 910, 924, 10 P.3d 390 (2000).

In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both that counsel's performance was deficient and that his defense was thereby prejudiced. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel's performance is deficient when it falls below an objective standard of reasonableness. State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). To demonstrate prejudice, the defendant must show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *A reasonable probability is a probability sufficient to undermine*

*confidence in the outcome.'"* Thomas, 109 Wn.2d at 226 (alteration in original) (quoting Strickland, 466 U.S. at 694). Defense counsel's failure to argue same criminal conduct at sentencing can amount to ineffective assistance of counsel. State v. Saunders, 120 Wn. App. 800, 824-25, 86 P.3d 232 (2004) (concluding that counsel's performance was deficient where counsel did not argue same criminal conduct as to rape and kidnapping charges); cf. Brown, 159 Wn. App. at 16-17 (concluding that defendant received effective assistance of counsel).

"[I]t is the defendant who must establish that crimes constitute the same criminal conduct" at sentencing. State v. Graciano, No. 86530-2, 2013 WL 376076, at *4 (Wash. Jan. 31, 2013). Nevertheless, we conclude that a reasonable possibility exists that the sentencing court would have found that the attempted rape and unlawful imprisonment offenses constituted the same criminal conduct had Phuong's counsel so argued. The offenses were committed at the same time and place and involved the same victim. See Vike, 125 Wn.2d at 410; RCW 9.94A.589(1)(a). Moreover, a sentencing court could determine that the offenses were committed with the same criminal intent. See Vike, 125 Wn.2d at 410; RCW 9.94A.589(1)(a). Phuong's "objective criminal purpose" in committing each offense, the court could conclude, was to rape Liem—he dragged her from her car, through the garage, and upstairs to his bedroom in order to accomplish that purpose. See Adame, 56 Wn. App. at 811. In addition, the court could determine that the unlawful imprisonment furthered the offense of attempted rape in the second degree. See Burns, 114 Wn.2d at 318.

Given the facts of this case, defense counsel's failure to argue same criminal conduct at sentencing constituted deficient performance.[43] Further, there is a reasonable probability that, had counsel so argued, the trial court would have found that the attempted rape and unlawful imprisonment offenses encompassed the same criminal conduct. Because Phuong received ineffective assistance of counsel at sentencing, we remand for a new sentencing hearing in which his counsel can argue that the offenses committed by Phuong encompass the same criminal conduct.[44]

The convictions are affirmed. The cause is remanded to the superior court for a new sentencing hearing.

We concur:

---

[43] Indeed, it is unsurprising that a case in which the incidental restraint concern is debated would also give rise to an issue of same criminal conduct. In 1989, reflecting on the effect of the then-relatively new Sentencing Reform Act, Justice Utter observed that the same criminal conduct analysis at sentencing might ameliorate the—as he saw it—harshness underlying the incidental restraint concern.

> The sentencing reform act effectively supplants the merger analysis at issue here. See RCW 9.94A.400 ("same criminal conduct" inquiry and effect of concurrent sentencing); cf. State v. Collicott, 112 Wn.2d 399, 771 P.2d 1137 (1989) [applying "same criminal conduct" analysis as opposed to merger analysis in prosecution for rape, kidnapping, and burglary].

Fletcher, 113 Wn.2d at 56 (Utter, J., dissenting).

[44] Phuong also contends in a statement of additional grounds that Liem withdrew money from his checking account without his permission. This contention is wholly unrelated to Phuong's convictions for unlawful imprisonment and attempted rape in the second degree. It does not warrant appellate relief.

State v. Phuong, No. 67524-9-I

BECKER, J. (dissenting) — I respectfully dissent from the majority's decision to affirm Rattana Phuong's conviction for unlawful imprisonment. My reasons are the same as those stated in my dissent in State v. Grant, No. 65172-2-I, 2012 WL 7548988 (Wash. Ct. App. Dec. 24, 2012). Phuong's restraint of his estranged wife, Samouen Liem, was merely incidental to his attempts to rape her. Only the conviction for attempted rape should stand.

"A person is guilty of unlawful imprisonment if he or she knowingly restrains another person." RCW 9A.40.040(1). Like kidnapping, unlawful imprisonment has "restraint" as one of its elements. "Restrain" means "to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty." RCW 9A.40.010(6). Restraint is without consent if accomplished by physical force, intimidation, or deception. RCW 9A.40.010(6).

The mere incidental restraint and movement of the victim during the course of another crime which has "no independent purpose or injury" is insufficient to establish a kidnapping. State v. Brett, 126 Wn.2d 136, 166, 892 P.2d 29 (1995) (citing State v. Green, 94 Wn.2d 216, 227, 616 P.2d 628 (1980)), cert. denied, 516 U.S. 1121 (1996). Likewise, the mere incidental restraint and movement of the victim which might occur during the course of another crime which has "no independent purpose or injury" is insufficient to establish unlawful

imprisonment. State v. Washington, 135 Wn. App. 42, 50-51, 143 P.3d 606 (2006), review denied, 160 Wn.2d 1017 (2007).

In Washington, a husband ordered his wife into a car and restrained her when she tried to leave. He then committed assault by punching and choking her and hitting her head against the window. Distinguishing Green on its facts, this court found sufficient evidence to support conviction for unlawful imprisonment as well as assault. The restraint was not merely incidental to the assaults; the assaults "were acts of rage triggered by her brief act of independence." Washington, 135 Wn. App. at 50-51.

Phuong's restraint of Liem had no purpose independent of his attempt to rape her, and it caused no independent injury. Phuong made clear throughout the incident that he was restraining Liem in order to rape her. Liem testified that Phuong started berating her in front of their children, calling her a "hooker," and asking her to go upstairs and have sex with him. When she refused and tried to leave, he pulled her from her car, again saying he wanted sex, and dragged her up the stairs to his bedroom. Once they were inside the bedroom, Phuong struggled to get on top of Liem, pushing her onto a mattress on the floor, pulling her shirt down, and tearing her pants. Liem testified that as Phuong blocked her efforts to leave the bedroom, he again told her he wanted to have sex with her and still loved her.

Phuong's restraint of Liem lasted no longer than his attempts to corral her into the bedroom and rape her. Liem suffered a knee injury when Phuong pulled her out of her car, but contrary to the State's argument, the knee injury was not

2

an injury independent of the attempted rape. When Phuong pulled Liem from the car, his express intent was to get her into the upstairs bedroom and rape her.

The prosecutor argued in closing that the restraint necessary for the unlawful imprisonment charge was shown in the following actions:

> She was trying to drive away when he went up to her, grabbed her out the car, pulled her up the stairs, threw her in the room; and then when she was trying to leave, he kept shoving her back down and getting on top of her.

The prosecutor then included these same acts as the substantial step towards the commission of attempted rape:

> Again, he doesn't need to have sex with her. We have to show he had the intent to do it and what he did was a substantial step. . . . He told her that he wanted to have sex with her. So already you know he's thinking about having sex. He's not thinking about pulling her up to the room so that he can beat the crap out of her. He's not thinking of pulling her up in the room so he can yell at her. He wants to pull her up in the bedroom to have sex with her.
> . . . .
> And so what he does is he uses force to get her upstairs to try to rape her. . . .
> . . . He throws her in the room, shuts the door, locks the door to keep the kids from getting inside. And then, as Samouen described, he repeatedly pushed her down. She would try to get back up. He pushed her down. He got on top of her, and he ripped open her pants with such force that the fabric below it actually ripped out.

When viewed in the light most favorable to the State, the evidence shows the restraint was part and parcel of the attempted rape. The unlawful imprisonment conviction should be vacated for insufficient evidence and the charge dismissed with prejudice.

I dissent from the majority's affirmance of the unlawful imprisonment conviction for the additional reason that the information was deficient. An

3

essential element of unlawful imprisonment is that a person have knowledge that the restraint was "without legal authority." State v. J.C. Johnson, 172 Wn. App. 112, 139-40, 297 P.3d 710 (2012), as modified on denial of reconsideration (February 13, 2013). That element was not set forth in the information here.

The majority concludes that "without legal authority" is not an essential element of unlawful imprisonment. The majority believes this conclusion is compelled by our Supreme Court's recent decision in State v. Allen, ___ Wn.2d ___, 294 P.3d 679 (2013). Majority at 51-55 & n.42. The parties to this case have not had the opportunity to brief Allen's possible impact on this case. In my opinion, Allen is distinguishable. Following J.C. Johnson, I would hold that even if Phuong's conviction for unlawful imprisonment is upheld against his challenge to the sufficiency of the evidence, it should be reversed without prejudice because of the defective information.

Becker, J.